## Club Laundry & Cleaning Co. *v.* Murphy, Appellant.

*Contract—Rescission—Contract for sale of real estate—Affidavit of defense—Corporations—President—Warrant of attorney—Practice, C. P.*

1. In an action by a corporation against its president to recover from him a sum paid in cash under a written agreement by which he sold to the company certain real estate and personal property incident to a business and by which he was to receive, as part of the purchase price, stock of the company "upon the delivery of said property," without any time set for the payment of the balance, but with covenant for further assurances, the court will construe the contract as making the stock issue conditioned upon immediate delivery of the property, without such delivery being dependent upon payment of the balance of the purchase price.

2. Ordinarily, in the sale of real estate, if the contract is silent as to the time and manner of payment, the law will presume, unless the contract expresses otherwise, that delivery of the deed and payment of the purchase money are intended to be mutual, concurrent and dependent covenants; if either would charge the other upon it, he must put him in default by showing a refusal to perform, or show some act equivalent to a refusal.

3. In such a case an affidavit of defense is insufficient, which denies repudiation of the contract and avers that consummation of the contract was talked over many times by defendant with the other officers and directors of the company, and "defendant stood ready and willing to perform all and every part of his agreement with said company until it was fully demonstrated to the officers and directors and so stated and admitted by them that the same

[contract] could not be carried into effect under the existing conditions."

4. As president of the company it was necessary for him to give the fullest explanation as to the reasons why the deal could not be concluded, and to show that the circumstances did not arise from any act which he, as an officer of the company, was responsible for, or could, in such capacity, have prevented. As the executive officer, he was largely responsible for the successful conclusion of the deal. After receiving a part of the purchase price, he could not, by any questionable arrangement or failure to act on his part, have so arranged matters as to make it impossible to carry the deal through.

5. In an action by a corporation against its president, authority of the officers of the company to bring the suit cannot be questioned on an affidavit of defense. The proper practice is to require counsel to file a warrant of attorney, and if the officers lack the authority, the question can be decided before trial and the time of the court not be unnecessarily taken up with the merits of the case, if the authority does not exist.

6. The fact that a person is president of a corporation, does not preclude the company from instituting an action to recover from him moneys unlawfully held.

7. A contract for sale of real estate which does not specifically describe it or furnish data from which its size or location may be ascertained, is not sufficient.

Argued October 16, 1919. Appeal, No. 89, Oct. T., 1919, by defendant, from order of C. P. Allegheny Co., Jan. T., 1919, No. 524, making absolute rule for judgment for want of a sufficient affidavit of defense in case of Club Laundry & Cleaning Co. v. Thomas W. Murphy. Before BROWN, C. J., MOSCHZISKER, FRAZER, WALLING, SIMPSON and KEPHART, JJ. Affirmed.

Assumpsit for $4,000. Before CARPENTER, J.

The court made absolute rule for judgment for want of a sufficient affidavit of defense. Defendant appealed. The facts appear by the opinion of the Supreme Court.

*Error assigned* was the order of the court.

*John J. Kennedy,* of *Griffith & Kennedy,* with him *William A. Griffith,* for appellant, cited: McCullough

v. Boyd, 120 'Pa. 552; Sanders v. Brock, 230 Pa. 609; Irvin v. Bleakley, 67 Pa. 24; Shilanski v. Farrell, 57 Pa. Superior Ct. 137; Allison v. Montgomery, 107 Pa. 455; Morrow v. Rees, 69 Pa. 368.

*McKee, Mitchell & Alter* and *Joseph A. Beck,* for appellee, were not heard.

OPINION BY MR. JUSTICE KEPHART, January 5, 1920:

This is an appeal from a judgment entered for want of a sufficient affidavit of defense. The action, in so far as it relates to the judgment directed, is based upon the rescission and repudiation by a vendor of his contract of sale and it seeks to recover the moneys paid on account of that contract. The statement avers that defendant sold to plaintiff "Certain real estate consisting of three buildings [, one] 19 x 100 owned by Thomas Murphy of Club Pressing Company, [the others] 22 x 100 and 41 x 100 owned by Club Pressing Company, also all the certain good will and existing business conducted by said Thomas W. Murphy under the name of Club Pressing Company, situate at 6339 Penn avenue, Pittsburgh, Pa., consisting of all stock, furniture, fixtures, book accounts, merchandise, horses, wagons and all other assets on said premises," for the sum of $70,000. The only reference to payment of consideration is as follows: "The company hereby agrees, in consideration of said sale and upon the delivery of said property to it, to issue to the vendor......at such times and in such amounts as they shall respectively direct, certificates of stock of the company to the aggregate amount of three thousand five hundred shares," the shares having a par value of $10 each. The agreement does not attempt to direct how the balance of the consideration should be paid; $4,000 was paid on account of it, and that is the sum plaintiff now seeks to recover in this action. So far as the agreement expresses the intention of the parties, it contemplates a sale of real estate and personal property and makes the stock issue conditioned upon delivery of the proper-

ty; but this delivery is not dependent upon payment of the balance of purchase price. It is not so stated in the agreement, nor does the affidavit set up such condition. While ordinarily, in the sale of real estate, if the contract is silent as to the time and manner of payment, the law will presume, unless the contract expresses otherwise, that delivery of the deed and payment of the purchase money are intended to be mutual, concurrent and dependent covenants; if either would charge the other upon it, he must put him in default by showing a refusal to perform, or show some act equivalent to a refusal: 7 R. C. L., sec. 8, p. 1091; but, under the terms of this contract, it is quite plain that the personal property and business of defendant was to be immediately delivered. This is evident, as the contract, in addition to the paragraph last quoted, in paragraph five requires the vendor on request to execute such further assurances as shall be required for vesting in the company title to the property and rights thereby sold; and the affidavit alleges payment of the balance of the consideration was to be made up from sales of stock. It is stated in the affidavit: "If the said Collins [secretary and treasurer] had exerted himself to sell the company's stock, as much or about as much as defendant, among his railroad and other friends, the company would have been able to have sold a sufficient amount of its stock to have paid its purchase money for the property in question and to have had a working capital sufficient for its purposes upon which to do business." The affidavit does not aver delivery of the property and business, or an attempt to deliver. It denies repudiation of the contract, and sets up that consummation of the contract was talked over many times by defendant with the other officers and directors of the company, and "defendant stood ready and willing to perform all and every part of his agreement with said company until it was fully demonstrated to the officers and directors and so stated and admitted by them that the same [contract] could not be

carried into effect under the existing conditions." This statement was clearly insufficient to prevent the summary judgment. Just what was "fully demonstrated" to prevent the contract from being carried into effect does not appear. This is important, for the reason defendant was president and a director of plaintiff company; the answer resolves itself into a statement by defendant that he was willing to carry out the agreement until he and his fellows saw that it was impossible to do so and his discussion with the officers of the company was a discussion with himself and the officers of the company as to the desirability of proceeding further with a contract wherein he, as an individual, had a primary interest. He had received a certain part of the company's assets, and to relieve the transaction of any charge of unfair dealing by himself, as president of the company, with the other members of the company, it was necessary to give the fullest explanation as to the reasons why the deal could not be concluded, and to show that the circumstances did not arise from any act which he, as an officer of the company, was responsible for, or could, in such capacity, have prevented. As the executive officer, he was largely responsible for the successful conclusion of the deal. After receiving a part of the purchase price, he could not lawfully, by any questionable arrangement or failure to act on his part, have so arranged matters as to make it impossible to carry the deal through. On the other hand, where the acts have been in good faith, with an evident intention to promote the company's interest, if the company rescinds and refuses to comply with its agreement, defendant would be entitled to all protection the law ordinarily gives under such circumstances, though he is an officer of the defaulting company. His dual position, when he attempts to set up this defense, is what makes his duty of full explanation more exacting. Did the officers of the company come to the conclusion that it was impossible to raise the amount of money from the sale of the stock to

carry the deal through as originally intended, and did the defendant, as such officer, do all that was required of him to effect the sale of the stock?  Did defendant in any way interfere with the negotiations for the sale of the stock, and did he, by his failure to deliver the property, interfere with and so embarrass the situation as to make sales of stock impossible?  We are entirely in the dark as to any of these matters.  The utmost good faith was required of defendant, who, as an officer of the company, participated in a meeting which declared his contract at an end, and enabled him to keep money paid on account of it.  While the agreement does not specifically describe the real estate, or furnish any data from which the size of the lots or their location might be ascertained —and we might dismiss the appeal on that ground—we have concluded to rest our decision on the question presented by the appellant.

Some objection has been made to the authority of plaintiff's officers to institute this action.  Passing over the sufficiency of the affidavit to raise this question, an objection of this character is one that should be decided before the trial takes place.  The parties should not be put to the inconvenience and annoyance of going to trial if the plaintiff's officers or counsel were not authorized to institute the litigation.  The proper practice is to require counsel to file a warrant of attorney, and if the officers lack the necessary authority, the question can be decided before trial and the time of the court not be unnecessarily taken up with the merits of the case if the authority does not exist.  The statement is signed by counsel for plaintiff and attested by the club company's secretary and treasurer.  There is no denial that the latter is an officer of the company, and there was no request to file a warrant of attorney; while defendant was president of the company, his position would not preclude the company from instituting an action to recover from him moneys unlawfully held.

The judgment of the court below is affirmed.