[Civ. No. 38505. Second Dist., Div. Four. Mar. 17, 1972.]

SECURITY PACIFIC NATIONAL BANK, Plaintiff, Cross-defendant and Respondent, v.
LEO W. GOODMAN et al.,
Defendants, Cross-complainants and Appellants;
A. R. REDINGER et al., Defendants, Cross-defendants and Respondents.

## COUNSEL

Cohen & Karger, Milton M. Cohen and Patti Karger for Defendants, Cross-complainants and Appellants.

Iverson, Yoakum, Papiano & Hatch, R. Noel Hatch and Gary B. Frakes for Plaintiff, Cross-defendant and Respondent.

No appearance for Defendants, Cross-defendants and Respondents.

## OPINION

**FILES, P. J.**—This is a controversy over the ownership of a boat, involving the effect of the registration law in the Harbors and Navigation Code and several provisions of the Uniform Commercial Code concerning sales and secured transactions.

On August 11, 1965, Mr. and Mrs. Redinger borrowed from Security First National Bank (now Security Pacific National Bank) the sum of $7,725.60, repayable at the rate of $128.76 each month, and executed an agreement granting to the bank a security interest in a 27-foot motor boat. Soon afterwards an undocumented vessel certificate of ownership was issued by the State of California naming Mr. Redinger as registered owner and the bank as legal owner.

On January 6, 1966, Mr. Redinger delivered the boat to Jeffries & Enderle, Inc. (hereinafter Jeffries), a dealer in boats, and told Jeffries about the outstanding bank loan. Jeffries gave Redinger, for his equity, a slip of paper which said, "Received of Al Redinger, address 143 Chestnut, Orange, twelve hundred fifty dollars for credit on boat of buyer's choice." Redinger

gave Jeffries a paper described in testimony as "a power of attorney for title to the boat." That document is not in evidence. Immediately after this transaction Redinger left on a trip to the Orient.

On February 14, 1966, appellants Goodman and Hicks gave Jeffries a $200 deposit on the purchase of the boat for a price of $7,500. They were aware that this was a used boat. On March 5, 1966, they paid an additional $3,000 and took possession of the boat, and on March 17 they paid the balance of the price.

On March 21, 1966, two installments of the Redinger loan were due and unpaid. The bank made inquiry of Mrs. Redinger and learned the boat had been delivered to Jeffries.

On March 29, 1966, the bank received a check from Jeffries in the sum of $257.52 representing the February and March installments on the Redinger loan, which check was dishonored for insufficient funds in the account. Upon investigation, the bank learned that the Jeffries company was in financial trouble becaues of an embezzlement, and that the boat was in the possession of appellants.

By reason of the default in payments, the bank elected to declare the full amount of the Redinger loan immediately due, and on April 25, 1966, the bank mailed letters to appellants and to the Redingers notifying them of the acceleration and demanding possession of the boat in accordance with the terms of the security agreement:

On April 28, 1966, the bank commenced this action against the Redingers and appellants to recover possession of the boat or its value. On the following day the sheriff, acting under a writ issued ex parte pursuant to section 509 et seq. of the Code of Civil Procedure, took possession of the boat. No redelivery bond having been filed within the statutory period (Code Civ. Proc., § 514), the sheriff delivered the boat to the possession of the bank.

When Redinger returned from his trip he learned what had happened, and entered into negotiations with the bank for reinstatement of his loan. On July 11, 1966, the Redinger loan was reinstated. As of that date the balance due was $5,951.80. Redinger paid certain of the bank's charges in repossessing the boat and agreed to make up the delinquent installments. The bank then delivered the boat to Redinger.

Eventually Redinger paid off the loan and sold the boat to a person not a party to this action.

Appellants filed an answer and cross-complaint against the bank and Redingers to recover damages for the alleged conversion of the boat by

those cross-defendants. The case was tried by the court, sitting without a jury, resulting in a judgment in favor of the bank on its complaint for the recovery of the boat, and against appellants in their cross-complaints. Appellants are appealing from the whole judgment.

On the date this action commenced the bank had a perfected security interest in the boat. The agreement was in writing, and the security was perfected by the issuance of a certificate of ownership, showing the bank as legal owner, under Harbors and Navigation Code section 681[1] (Uniform Com. Code, § 9302, subd. (4)). The agreement authorized the bank to take possession of the boat in the event of default.

We take note that since the trial of this case our Supreme Court has held unconstitutional the statutory procedure whereby a creditor obtains possession of the security upon an ex parte application. (*Blair* v. *Pitchess* (1971) 5 Cal.3d 258, 276 [96 Cal.Rptr. 42, 486 P.2d 1242].) That decision has no bearing upon the outcome in this case. Inasmuch as the bank was entitled to possession, as the court ultimately decided after a trial, no legal harm was done when the sheriff took possession at the bank's request prior to the trial. (*Crosswhite* v. *American Insurance Co.* (1964) 61 Cal.2d 300 [38 Cal.Rptr. 412, 392 P.2d 5].)

We cannot agree with appellants' contention that section 9307 of the Uniform Commercial Code gave them title free of the bank's security interest. That section provides: "A buyer in ordinary course of business (subdivision (9) of Section 1201) other than a person buying farm products from a person engaged in farming operations takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence."

Subdivision (9) of section 1201 of the same code states: " 'Buyer in ordinary course of business' means a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind but does not include a pawnbroker."

If appellants are to qualify as buyers "in ordinary course of business," they must have purchased "from a person in the business of selling goods of that kind," *i.e.*, a dealer. Jeffries was such a person. The statute gives appellants the property free of a security interest created by their seller— *i.e.*—created by Jeffries. The bank's interest was created by the Redingers. If we were to construe the transaction as a sale from the Redingers to

---

[1]Repealed and reenacted in 1970 as Vehicle Code section 9853.

appellants, the statute would still be inapplicable for the reason that the Redingers were not in the boat-selling business.

■ Determining that the bank was entitled to possession is only a part of the case. Appellants' cross-complaint charges that the Redingers and the bank converted appellants' property in that the bank subsequently turned the boat back to the Redingers. It is thus necessary to analyze the legal significance of the transactions between Redinger, Jeffries and appellants.

■ Section 700 of the Harbors and Navigation Code[2] provided "No transfer of the title or any interest in or to an undocumented vessel numbered under this code shall pass, and any attempted transfer shall not be effective, until . . ." the endorsed certificate of ownership has been delivered or mailed to the Department of Harbors and Watercraft for transfer.

The certificate of ownership which stood in the name of the bank as legal owner and Redinger as registered owner was neither endorsed nor delivered until the bank loan was paid off. Prior to that time it remained in the possession of the bank. It is the bank's contention that appellants never acquired any interest in the boat because section 700 declared the attempted transfer "ineffective."

This statute is substantially the same as the language of the Vehicle Code relating to the transfer of motor vehicles (see Veh. Code, § 5600), and we look to the vehicle cases for authoritative interpretation. ■ It has long been established that a transfer of the property interest in a motor vehicle is effective as between the immediate parties even though they have not complied with the registration statute. (*Kenny* v. *Christianson* (1927) 200 Cal. 419, 423 [253 P. 715, 50 A.L.R. 1297]; *Henry* v. *General Forming, Ltd.* (1948) 33 Cal.2d 223, 226 [200 P.2d 785].) ■ Under the principle established by this line of cases, the agreement between Redinger and Jeffries, followed by the delivery of the boat to Jeffries, effectively transferred Redinger's right of possession to Jeffries. This transaction did not cut off the security interest of the bank, as we have pointed out above, but it did transfer Redinger's possessory interest to Jeffries despite noncompliance with the registration statute.

■ Jeffries' sale to appellants was governed by Uniform Commercial Code section 2403, which provides in subdivisions (2) and (3): "(2) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business.

---

[2]Now Vehicle Code section 9900.

"(3) 'Entrusting' includes any delivery and any acquiescence in retention of possession for the purpose of sale, obtaining offers to purchase, locating a buyer, or the like; regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law."

The record shows without conflict that Redinger entrusted possession of the boat to Jeffries, who was a merchant dealing in such boats. Under the language of this statute, Jeffries had power to transfer all of Redinger's rights to appellants. Since Jeffries placed no limitations upon the sale to appellants, it follows that that transaction gave appellants "all rights'" of Redinger.

The record also shows that the bank became aware, prior to the filing of this action, that Redinger had delivered the boat to Jeffries and that Jeffries had sold it to appellants. On April 25, 1966, just three days before the action was filed, the bank sent a letter of demand to appellants. The bank was therefore chargeable with the knowledge that appellants had acquired the rights referred to in section 2403.

The bank points out that section 2403 is a part of division 2 of the Uniform Commercial Code, which includes section 2102, which provides in part "nor does this division impair or repeal any statute regulating sales to consumers, farmers or other specified classes of buyers." The California annotation[3] to section 2102 states: "Apparently the section would also exclude certain special statutes pertaining to sales to unique groups of buyers; for example, the provisions of the Vehicle Code relating to sale of and recording of sale of motor vehicles, etc."

The bank argues that section 2102 prevents section 2403 from operating to override the registration statutes in the Vehicle Code and the Harbors and Navigation Code. Assuming that the bank's theory is correct, it is of no moment here because there is no inconsistency between section 2403 and the registration statutes as applied to the facts of this case. Under the line of cases referred to above, the registration statutes do not operate to void sales as between buyer and seller. The Vehicle Code does not aid a seller of a motor vehicle or boat to recover it back simply by showing that the registration statute has not been complied with. (See *Kenny* v. *Christianson, supra,* 200 Cal. 419.) It is thus not inconsistent with the Vehicle Code to provide that an entrusting of possession of a boat or motor vehicle to a merchant empowers him to transfer the interest of the

---

[3]Deering's Uniform Commercial Code Annotated following section 2102; see also West's Commercial Code Annotated following section 2102.

transferor. Precisely that result was obtained in the *Kenny* case, *supra*, on the theory that the merchant was the agent of the entruster. In *Kenny*, the plaintiff placed a motor vehicle in the possession of a dealer to find a purchaser. The dealer sold the car to defendant for cash and absconded with the proceeds. Plaintiff sought to recover the car upon the ground that defendant had never received a registration certificate, citing the statute which provided that until such a certificate was issued, an intended transfer was "not to be valid or effective for any purpose." After reviewing several decisions construing that Act, the Supreme Court said (at p. 424): "In the face of these authorities we are constrained to hold that the plaintiff was not entitled to rely upon the provisions of the Motor Vehicle Act in question to sustain her own title or to defeat the defendant's right of possession based upon the foregoing transaction."

The case at bench differs from the *Kenny* case in that there is no showing that Jeffries was Redinger's agent. However, the significant feature of the *Kenny* case, and the others like it, is that the language of the registration statute has not been given a literal application to allow a seller to set aside a sale which he authorized and intended to make. Redinger intended to transfer his interest to Jeffries, and he gave Jeffries both possession and power of attorney so that it could sell the boat in the market. It is not the purpose of the registration statute to give the former owner a basis for recovering the property after the dealer has resold it for value. A purpose underlying section 2403 is to protect the merchantability of goods in the possession of a dealer. That policy is perfectly consistent with the vehicle registration statutes as they have been construed in the courts of this state and as applied to the facts of this case.

The decision in *Morris Plan Co.* v. *Moody* (1968) 266 Cal.App.2d 28 [72 Cal.Rptr. 123], relied upon by the bank, is not in conflict with our decision here. In that case the legal owners of three motor vehicles sold the vehicles to Moody, a dealer, in exchange for a bank draft. Moody resold the vehicles on conditional sales contracts which were assigned to Morris Plan, a financial agency. Moody's draft was dishonored, and the legal owners never endorsed or delivered their certificates of ownership. The action by Morris Plan to quiet title to the vehicles against the legal owners failed. Morris Plan had acquired nothing except security interests which had not been perfected. The opinion points out that Commercial Code section 2403 did not apply to benefit Morris Plan. The case is not concerned with what rights may have passed to the purchasers of the vehicles.

The bank argues here that the trial court's findings numbered 8 and

11 establish "that appellants had knowledge of respondent Bank's interest in the yacht prior to their paying funds to Jefferies." Finding 8 is simply to the effect that appellants knew they were buying a used boat; and finding 11 is to the effect that when they made the final payment they knew the registered owner was A. R. Redinger. This is not a finding that appellants took with knowledge of the bank's security interest.

From the foregoing analysis, it follows that Redinger was not entitled to possession of the boat when the bank turned it back to him, because his former rights had passed to appellants. The trial court erred in concluding, as a basis for its decision on the cross-complaint, that nothing had passed to appellants because of noncomplinace with the registration statute.

The trial court's conclusion of law numbered 7 states: "7. If defendants GOODMAN and HICKS acquired any interest in and to said boat, it was subordinate to plaintiff's, and defendants GOODMAN and HICKS refused to protect whatever interest they may have had by not paying off the balance due to plaintiff."

The implication of the second clause is that appellants' failure to pay the bank operated as a forfeiture of their interest. There is no finding by the trial court, or any evidence which would support a finding, that appellants waived or abandoned or forfeited their rights in any other way.

In the context of this case, appellants' inaction did not ipso facto operate as a relinquishment of their interest in the boat or their rights against the bank as the secured party in possession. Appellants had never agreed to pay the bank, and were under no duty to do so. Nevertheless appellants owned an interest in the collateral which the bank knew of and which the bank was required to respect.

Uniform Commercial Code section 9105, subdivision (1)(d), states: "Where the debtor and the owner of the collateral are not the same person, the term 'debtor' means the owner of the collateral in any provision of the division dealing with the collateral, the obligor in any provision dealing with the obligation, and may include both where the context so requires." Some implications of this definition are spelled out in section 9112.[4]

---

[4]Section 9112: "*Unless otherwise agreed*, when a secured party knows that collateral is owned by a person who is not the debtor, the owner of the collateral is entitled to receive from the secured party any surplus under Section 9502(2) or under Section 9504(2), and is not liable for the debt or for any deficiency after resale, and he has the same right as the debtor (a) *To receive statements under* Section 9208; (b) To receive notice of and to object to a secured party's proposal to retain the collateral in satisfaction of the indebtedness under Section 9505;

Section 9504 of the Uniform Commercial Code authorizes the secured party to sell or otherwise dispose of the collateral after default, and requires it to account to "the debtor" for any surplus. That section also requires the secured party to give "the debtor" notice of the time and place of any intended sale or other disposition of the collateral. Section 9506 gives "the debtor" the right to redeem the collateral at any time before the secured party has disposed of it under section 9504. In each of those sections, the word "debtor" must be read to mean "owner of the collateral" by reason of the definition in section 9105 quoted above.

The bank did not proceed under section 9504. There is no evidence it gave appellants notice of what it intended to do with the boat. When the bank gave the boat to Redinger, he was thereby enabled to sell it and cash in the equity which belonged to appellants.

Section 9507 of the same code provides that if the secured party does not proceed in accordance with the statute, and disposes of the collateral, "the debtor" (here the owner of the collateral) may recover from the secured party any loss caused by failure to comply with the statute. Under section 9504 the bank might have sold the boat "in a commercially reasonable manner," or under section 9506 appellants were entitled to redeem the boat by paying off the bank at any time before the bank had made a lawful disposition of it. Either way, appellants would have been able to preserve their equity—*i.e.*—the difference between the value of the collateral and the amount required to satisfy the bank.

Prior to the adoption of the Uniform Commercial Code, the California cases held that the unauthorized sale of collateral by the secured party constituted a conversion, for which the debtor was entitled to recover as damages the value of the collateral less the amount of the indebtedness. (*Gay* v. *Moss* (1867) 34 Cal. 125, 132; *Story & Isham C. Co.* v. *Story* (1893) 100 Cal. 30, 37 [34 P. 671]; *Revert* v. *Hesse* (1920) 184 Cal. 295, 303 [193 P. 943]; *Goldberg* v. *List* (1938) 11 Cal.2d 389 [79 P.2d 1087, 116 A.L.R. 900]; *Zarillo* v. *Le Mesnager* (1921) 51 Cal.App. 442 [196 P. 902]; *Security Inv. Co.* v. *Bieg-Hoffine Co.* (1936) 15 Cal. App.2d 225, 227 [59 P.2d 584]; *Flennaugh* v. *Heinrich* (1948) 89 Cal. App.2d 214 [200 P.2d 580].) None of these cases involved collateral that was owned by someone other than the debtor; but the cases support the view that the damage for the wrongful disposition of the collateral is measured by the value of the equity, rather than the value of the whole property.

(c) To redeem the collateral under Section 9506; (d) To obtain injunctive or other relief under Section 9507(1); and (e) To recover losses caused to him under Section 9208(2)."

Appellants argue that they are entitled to recover the value of the boat, citing *Beverly Finance Co.* v. *American Casualty Co.* (1969) 273 Cal. App.2d 259 [78 Cal.Rptr. 334]. That case is not in point, for the recovery there was in favor of a party who owned the entire interest in the motor vehicle which had been converted.

Appellants' contention is that, since their transaction with Jeffries was for the purchase of "the boat," Redinger owes them "the boat" or its value. Appellants and Redinger were all victims of the fraud and subsequent insolvency of the Jeffries company. We do not find any authority for shifting the entire loss to Redinger. He lost his equity because he placed his property in the hands of a dealer intending the dealer to sell it, and the dealer sold it. But neither section 2403 nor the policy underlying it would take from Redinger more than his own rights.

Appellants had a simple and effective means of determining whether any security interest was outstanding. Had they gone to the public records of the State Department of Harbors and Watercraft they would have learned of the bank's perfected security. Redinger was in the more vulnerable position, in that he entrusted his property to Jeffries in consideration of promises made to him by Jeffries. It would be unjust to require Redinger to make good appellants' expectations of clear title which were based upon the fraudulent representations of the Jeffries company.

Appellants here acquired only an equity, which they lost because the bank turned the boat over to the Redingers. The bank and the Redingers are jointly and severally liable to appellants for the amount, if any, by which the value of the boat at the time of the conversion exceeded the amount which the bank was entitled to receive under its note and security agreement. Since the issue of damage has not been tried, the case must be remanded.

The judgment is affirmed insofar as it determined plaintiff's right to recover possession of the boat. That portion of the judgment which denied relief on appellants' cross-complaint is reversed, for a retrial on the issue of damage only.

Jefferson, J., and Kingsley, J., concurred.