Richard M. **FLETCHER**

v.

Anthony **COBUZZI**.

**Civ. A. No. 79–57 Erie.**

United States District Court,
W. D. Pennsylvania.

April 1, 1981.

Ira John Dunn, Erie, Pa., for Fletcher.

Leonard G. Ambrose, Erie, Pa., for Cobuzzi.

## OPINION

WEBER, Chief Judge.

This matter comes before the court on cross-motions for summary judgment on the issue of damages and is ripe for such disposition, there being no material issue of fact in dispute.

The facts in this case have been stipulated to by the parties and have been set out at length in this Court's previous opinion. *Fletcher v. Cobuzzi*, 499 F.Supp. 694 (W.D. Pa.1980). Briefly then, plaintiff was the owner of a number of shares of stock. He pledged these shares to defendant as collateral for a debt incurred in the purchase of defendant's restaurant business. Defendant later alleged a number of defaults and, without notice to plaintiff, sold a portion of the collateral at various dates in 1978–79 to satisfy the debt. However, these sales failed to conform to the provisions of 12A Pa.Stat.Ann. § 9–501 et seq. (current version at 13 Pa.C.S.A. § 9501–et seq.), which governs foreclosure on collateral pledged in a secured transaction.

This Court previously entertained cross-motions for summary judgment on the issue of liability and granted plaintiff partial summary judgment, finding that defendant had violated the provisions of 12A Pa.Stat. Ann. § 9–501 et seq., and was consequently liable for any proceeds in excess of the balance due defendant. We now consider the issue of the appropriate remedy and measure of damages to be applied under the law of Pennsylvania.

## I.

Defendant contends that debtor's sole remedy for any violation of the foreclosure provisions is that prescribed in 12A Pa.Stat.Ann. § 9–507. That section measures debtor's recovery by the proceeds of the secured party's disposition, if made in a commercially reasonable manner.

Section 9–507 does not on its face purport to be the exclusive remedy for violations of § 9–501 et seq. and indeed provides that where a disposition has occurred, "The debtor ... has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this Part." The exclusivity of the Section 9–507 remedy is not made imperative by the language of that section.

Section 1–103 specifically makes the common law applicable where not in conflict with the Code, stating that "the principles of law and equity ... shall supplement its provisions." See also *Carpel v. Saget Studios, Inc.* 326 F.Supp. 1331 (E.D.Pa.1971). Indeed other sections of the Code specifically recognize the applicability of some "other rule of law", 12A Pa.Stat.Ann. § 1–106, including conversion. 12A Pa.Stat.Ann. § 9–505. Although the Pennsylvania courts have not had occasion to consider the exclusivity of the § 9–507 remedy, we note that the majority of states considering the issue have denied § 9–507's exclusivity and have permitted the application of alternative remedies, including those for conversion, as not inconsistent with the purposes of the

Code. *E. g. Wells v. Central Bank of Alabama, N.A.,* 347 So.2d 114 (Ala.Civ.App. 1977); *Day v. Schenectady Discount Corporation,* 125 Ariz. 564, 611 P.2d 568, 569 (Ariz.App.1980); *Security Pacific National Bank v. Goodman,* 24 Cal.App.3d 131, 100 Cal.Rptr. 763, 768 (1972); *Wilmington Trust Co. v. Conner,* 415 A.2d 773 (Del.1980); *Universal C.I.T. Credit Corp. v. Shepler,* 164 Ind.App. 516, 329 N.E.2d 620 (1975); *Leasco Data Processing Equipment Corp. v. Atlas Shirt Co.,* 66 Misc.2d 1089, 323 N.Y.S.2d 13 (Civ.Ct.N.Y.1971); *FMA Financial Corp. v. Pro-Printers,* 590 P.2d 803 (Utah 1979).

In addition, the Legislature has provided by statute an alternative measure of damages for any conversion of fluctuating value items such as stocks. 42 Pa.C.S.A. § 8335.[1] This section provides:

> Damages for the conversion of stocks, bonds, or other like property of fluctuating value shall be limited to the difference between the proceeds of the conversion, or that portion thereof duly paid or credited to the owner, and such higher value as the property may have reached within a reasonable time after he had notice of the conversion. Where the facts are not in dispute, such period shall be fixed by the court as a matter of law.

The Legislature has, by this recently re-enacted provision, provided a concurrent, alternative remedy to § 9–507, applicable when an improper foreclosure rises to the level of a conversion. Thus the Legislature has itself denied the exclusivity of § 9–507, both by recognizing alternative remedies in other provisions of the Code, and by providing an alternative remedy by statute.

## II.

Plaintiff contends that Defendant's sale of the stock collateral was a conversion, and that the measurement of damages should be that set by 42 Pa.C.S.A. § 8335.

The Third Circuit, applying Pennsylvania law has defined conversion as "an act of wilful interference with the dominion or control over a chattel, done without lawful justification, by which any person entitled to the chattel is deprived of its use and possession." *Baram v. Farugia,* 606 F.2d 42, 43 (3d Cir. 1979); See also, *Norriton East Realty Corp. v. Central-Penn Nat'l. Bank,* 435 Pa. 57, 60–61, 254 A.2d 637, 638–39 (1969); *Stevenson v. Economy Bank of Ambridge,* 413 Pa. 442, 451, 197 A.2d 721 (1964). In the instant case, defendant's disposition of the collateral in violation of the Code requirements eliminated plaintiff's right under the parties' agreement of December 26, 1973 to redeem the collateral. The sale of the stock effectively placed it beyond the reach of plaintiff when he attempted to exercise his contract right to satisfy the debt and redeem the collateral, thereby interfering with plaintiff's right to dominion and control.

Further, defendant's acts were not made in good faith or by mistake, but were rather a knowing intentional conversion of the pledged collateral. Defendant certainly knew or should have known that the collateral was subject to a right of redemption under the December 26, 1973 agreement. Defendant failed to give notice to plaintiff of any of the sales. Defendant refused receipt of correspondence from both plaintiff and defendant's own counsel which defendant knew or should have known was in regard to the pledged collateral. After refusing this correspondence, defendant continued to sell plaintiff's stock. Defendant refused to make an accounting to plaintiff of the balance of the debt and any credit from the sales of the collateral. Taken as a whole, defendant's conduct evinces a complete disregard for the rights of the pledgee in the collateral and constitutes an intentional conversion of plaintiff's property.

## III.

A conversion having occurred, the proper measure of damages is that provided in 42 Pa.C.S.A. § 8335; that is the highest value attained by the stock between the date of conversion and a reasonable time after notice to the pledgor. *Bailey v. Jacobs,* 325

---

1. Original version at 1929 P.L. 476, No. 194; See also *Foley v. Wasserman,* 319 Pa. 420, 179 A. 595 (1935); *Gervis v. Kay,* 294 Pa. 518, 144 A. 529 (1928); Annot. 31 A.L.R.3d 1286 (1970).

Pa. 187, 206, 189 A. 320 (1937); *Foley v. Wasserman*, 319 Pa. 420, 179 A. 595 (1935).

■ In applying this measure of damages we seek to place plaintiff in the same position as if defendant had fully performed. Plaintiff by letter of April 4, 1979, indicated his intention to sell a portion of the collateral to satisfy the debt. Although plaintiff still had no notice of the conversion at that time, his expressed desire to sell would make any later valuation date result in an undeserved windfall to plaintiff. Therefore, the latter date for valuation purposes under the statute shall be a reasonable time after the request for sale.

■ Plaintiff also seeks the benefit of a 3 for 2 stock split which occurred in September 1978, after defendant had converted a portion of the collateral. Defendant had held 8,000 shares of plaintiff's stock as security for the debt in June, 1978. Had he not disposed of 5,000 shares in July-August 1978, the stock split would have produced an additional 4,000 shares. In order to place the plaintiff in as good a position as if defendant had fully performed, we hold the defendant liable for the quantity of the stock collateral as it would have been adjusted by the stock split, valued at $17 per share, that being the highest value attained by the collateral within 30 days after the plaintiff received notice of the conversion.[2]

For the reasons stated above, the court concludes that plaintiff is entitled to summary judgment on the issue of damages, and accordingly that defendant's cross-motion for Summary Judgment is denied. Therefore, judgment shall be entered for the plaintiff for the value of the 12,000 shares of stock held as collateral at $17 per share. This judgment shall be adjusted by deducting the amount of the outstanding debt owed by the plaintiff and by crediting the plaintiff for dividends and other payments made to the defendant. The parties shall prepare a form of judgment which reflects these adjustments for submission to the court.

Finally, we conclude that, on this record, an award of punitive damages or attorney's fees would be inappropriate.

**2.** Individual shares reached higher values than $17 but reflected an inflated value in anticipation of the stock split. The price of $17 per share, applied to the collateral as properly ad-

justed by the stock split, represents the highest aggregate value of the collateral for the period in question.