[No. B010443. Second Dist., Div. Five. June 6, 1986.]

In re the Marriage of TERI LYNN BAYS and
PAUL HARWOOD FINNELL.
TERI LYNN BAYS FINNELL, Respondent, v.
PAUL HARWOOD FINNELL, Respondent;
JAMES J. MARIN, Appellant.

**COUNSEL**

John T. Marin for Appellant.

Donald C. Cook for Respondent Wife.

No appearance for Respondent Husband.

## Opinion

**FEINERMAN, P. J.**—The sole issue on appeal is whether the trial court erred in denying the third party claim of appellant, James J. Marin, to an automobile.

### Background

On July 18, 1981, the judgment debtor, Paul Harwood Finnell, married Teri Lynn Bays Finnell. A few months later, the parties separated. On November 4, 1982, Mrs. Finnell filed an amended petition for dissolution of marriage and was granted attorney's fees of $1,980.70.[1] Shortly thereafter, a final judgment of dissolution was entered.

On July 15, 1983, Mr. Finnell sold appellant a BMW automobile for cash. Appellant was given a bill of sale, which read in relevant part as follows: "That in consideration of Four Thousand Dollars ($4,000.) to me in hand paid by JAMES MARIN the receipt of which is hereby acknowledged, I, PAUL H. FINNELL . . . do bargain, sell, and convey to the said JAMES MARIN one automobile, as is . . . ." The receipt identified the make, model and license number of the car and warranted it "against any lawful claims and demands of all and every persons whatsoever." The bill of sale was dated and signed by Mr. Finnell. Marin's wife, Bernadette Marin, also signed the document as a witness. In addition to the bill of sale, Mr. Finnell dated and signed over the pink slip on the car. Over the next four and a half months, Marin paid approximately $620 for mechanical inspection and repair of the car.

On August 14, 1984, Mrs. Finnell's attorney, Donald Cook (Cook), caused to be issued a writ of execution (money judgment) in the amount of the previously ordered attorney's fees, plus interest, for a total of $2,347.37. In his comments to the court, Cook stated that he utilized Department of Motor Vehicle (DMV) records to find property of Mr. Finnell to satisfy the debt. His search led to the car sold to appellant. Title was still formally in Mr. Finnell's name, although the address listed for the vehicle was appellant's address. Cook said he located the car at that address and on September

---

[1] The record is unclear in this area. On the same day, November 4, a minute order of a different department of the superior court recites that Mrs. Finnell petitioned for and was *denied* attorney's fees and costs re a motion filed two weeks earlier, October 19. Appellant asserts that Mrs. Finnell's attorney, Donald Cook, then went to a second department of the court where the proceeding for dissolution of marriage and order for attorney's fees came on for "default or uncontested" hearing, and that Cook failed to inform the court that a request for attorney's fees had been denied earlier that day. While the record is confusing as to why attorney's fees appear to have been denied and then granted on the same day, appellant's briefs do little more than point out the seeming discrepancy and speculate that attorney Cook must have committed a knowing fraud upon the court.

24, 1984, the Los Angeles County Marshal levied upon the automobile, which was parked in appellant's driveway.

On October 3, 1984, appellant filed a third party claim of ownership and right to possession on levied property and a petition for hearing on third party claim. On November 13, 1984, appellant's claim was heard. His exhibits included the bill of sale for the car, the car's ownership certificate (pink slip) and an Automobile Club receipt (dated Oct. 1, 1984) for $330 in transfer and use tax charges on the vehicle.

Appellant testified that he tried to secure a transfer of title from the DMV through the offices of the Automobile Club. He was told, however, that the documents he tendered could not be processed in the absence of a smog certificate. Appellant stated that since the car was not his primary vehicle, he did not rush to complete the repairs necessary to qualify for a certificate and left the car in Mr. Finnell's name as a matter of convenience.

During cross-examination, the court asked appellant whether he had anything from the DMV indicating that title had been transferred in his name. Appellant replied that he had an "incomplete application" and that he still needed a "compliance certificate." The court then asked, "Doesn't this whole case turn on whether or not the DMV has given you a transfer of ownership and a certificate of transfer?" Appellant responded that he believed that certain case law held that the records of the DMV did not necessarily and conclusively establish true ownership.

After the parties rested their case, the trial court reviewed its understanding of the law in this area as follows: "The judgment creditor can attach automobiles of a judgment debtor, and if the judgment debtor has sold that automobile and the person to whom it is sold doesn't take steps to secure title in his name through a certificate of transfer of ownership from DMV, then the purchaser of that automobile loses it if it's attached before he accomplishes that." Appellant contested whether this was the state of the law and brought to the court's attention a case (*Gates* v. *Levers* (1951) 108 Cal.App.2d 131 [238 P.2d 143]) which the court stated it would consider.

Respondent then argued to the court that there was nothing to show that appellant had paid $4,000 in cash for the car and that it might have been a gift from the judgment debtor. Respondent also asserted that the bill of sale's warranty against all claims against the car implied that there was some interest left in the judgment debtor, Mr. Finnell, who left the country after selling the car.[2]

---

[2]Respondent's brief records that Mr. Finnell had "left the mainland of the United States by small boat . . . and to the knowledge of [respondent] has never returned."

Appellant replied and stated that he had bought the car in good faith and that if the court would grant him a continuance, he would produce two witnesses to verify the cash transaction.[3] The court denied appellant's request for a continuance because it believed the testimony of the witnesses would not bear on the issue of whether the DMV had issued him a certificate of ownership or a transfer of title.

On January 15, 1985, the trial court denied appellant's third party claim.

DISCUSSION

Appellant contends that the trial court misstated the law in insisting that the case turned solely on whether appellant had perfected title with the DMV. We agree.

■ The law is well-settled that a "transfer of the property interest in a motor vehicle is effective as between the immediate parties even though they have not complied with the registration statute." (*Security Pacific Nat. Bank* v. *Goodman* (1972) 24 Cal.App.3d 131, 136 [100 Cal.Rptr. 763], citing to *Kenny* v. *Christianson* (1927) 200 Cal. 419, 423 [253 P.2d 715, 50 A.L.R. 1297] and *Henry* v. *General Forming, Ltd.* (1948) 33 Cal.2d 223, 226 [200 P.2d 785].) ■ A judgment creditor who attempts to levy against the property of a debtor in satisfaction of his debt obtains a lien only upon the debtor's interest. Where no actual interest is shown, the attaching creditor gets nothing. (*Henry* v. *General Forming, Ltd., supra,* 33 Cal.2d at pp. 225-226.) This is because an attaching creditor who gives no new value lacks the status of a bona fide purchaser. Instead, he "'stands in the shoes of the debtor, and his lien attaches only to the debtor's interest at the time of the levy.'" (*Citizens Bank of Roseville* v. *Taggart* (1983) 143 Cal.App.3d 318, 325 [191 Cal.Rptr. 729], quoting *Barron* v. *Tattenham* (1962) 199 Cal.App.2d 128, 131 [18 Cal.Rptr. 676].)

■ In *Henry* v. *General Forming, Ltd., supra,* 33 Cal.2d 223, 227 (*Henry*), the Supreme Court made clear that the requirements for registration of title and ownership to a vehicle were enacted "in the interest of the public welfare to protect innocent purchasers and afford identification of vehicles

---

[3]During direct examination, appellant told the court his witnesses to the transaction were each unavailable that afternoon for personal reasons. The court received the declarations of these witnesses into evidence, but sustained respondent's "hearsay objection as to all parts therein that [were] hearsay."

and persons responsible in cases of accident and injury."[4] Here, the innocent purchaser appears to have been appellant. The bill of sale, pink slip and repair bills are all strong indicia of ownership. It is uncontested that Mr. Finnell left the country and had no access to the car in question, which was under the control of and in possession of appellant since the time of the sale.

It should also be noted that, in the event of an accident, there is little doubt that appellant would have been liable as an owner of the automobile, despite the fact a change in legal title had not been perfected. (*Cal. State Auto. Assn. Inter-Ins. Bureau* v. *Dearing* (1968) 259 Cal.App.2d 717, 731 [66 Cal.Rptr. 852]; *Gates* v. *Levers, supra,* 108 Cal.App.2d 131, 133.) Appellant's address, if not his name, was recorded with the DMV, so that the vehicle and appellant could be readily located if necessary. Indeed, this is how respondent located the car.

Despite the trial court's insistence that appellant's third party claim turned on whether he had perfected title, we do not, as a matter of law, find this to have been controlling. A judgment creditor is not one for whose protection the ownership registration requirements were intended (*Henry, supra,* 33 Cal.2d at p. 227), nor do the records of the DMV necessarily and conclusively establish true ownership. (*Gates* v. *Levers, supra,* 108 Cal.App.2d at p. 133.) ▮ Insubstantial noncompliance with provisions of the Vehicle Code "will not give an attaching creditor of the transferor rights superior to a prior buyer with equitable title." (*Meritplan Ins. Co.* v. *Universal Underwriters Ins. Co.* (1966) 247 Cal.App.2d 451, 455 [55 Cal.Rptr. 561].)

While the trial court erred in assuming that the viability of appellant's third party claim was dependent on strict compliance with the requirements of Vehicle Code section 5600, there may be other factual grounds upon which the lower court could find that the transaction did not effectively

---

[4] At the time of the *Henry* decision, the statute governing vehicle transfer requirements was Vehicle Code section 186. In relevant part, it provided that: "No transfer of the title or any interest in or to a vehicle registered hereunder shall pass and any attempted transfer shall not be effective unless and until the parties thereto have fulfilled either of the following requirements: (1) The transferor shall have made proper endorsement and delivery of the certificate of ownership and delivery of the registration card to the transferee as provided in this code" and the transferee has delivered or sent those documents to the DMV with the proper transfer fee and thereby makes application for a transfer of registration or (2) the transferor shall have delivered or sent to the DMV the "appropriate documents for the registration or transfer of registration of such vehicle. . . ."

The language of Vehicle Code section 186 is the same in all pertinent parts as the successor statute, Vehicle Code section 5600, which governed the instant case. In *Henry,* as here, the third party claimant paid for the vehicle and took over possession and control of the car, as well as its ownership papers. In both cases, neither the transferee nor the transferor complied with the requirements of the code to show registration of the vehicle in the third party claimant as the vehicle's owner.

confer ownership of the car in appellant. For example, respondent argued to the court that the evidence failed to prove that appellant had paid $4,000 in cash for the car, leaving open the possibility that the vehicle may have been gratuitously conveyed. Respondent also asserted that Finnell's warranty against all claims against the car somehow implied that a residual interest was left in Mr. Finnell.

The judgment is reversed and the matter remanded for further proceedings in accordance with the views herein expressed.

Ashby, J., and Eagleson, J., concurred.