63 Cal.App.4th 1324 (1998)
ROBERT E. GORDON et al., Plaintiffs, Cross-defendants and Respondents,
v.
RICK HAMM et al., Defendants, Cross-complainants and Appellants; GENTRA CAPITAL CORPORATION, Cross-defendant and Respondent; DEERE CREDIT, INC., Cross-defendant, Cross-complainant and Appellant.
Docket No. B096786.
Court of Appeals of California, Second District, Division Five.
May 15, 1998.
*1325 COUNSEL
Marc A. Zimmerman for Defendants, Cross-complainants and Appellants.
Frandzel, Share, Robins, Kaplan & Bloom and Thomas S. Arthur for Cross-defendant, Cross-complainant and Appellant.
*1326 Voss, Cook & Thel and Edward L. Laird for Cross-defendant and Respondent.
No appearance for Plaintiffs, Cross-defendants and Respondents.
OPINION
ARMSTRONG, J.
This case involves the buyer and seller of a used Sarasota Country Coach motor home (the Coach), and the two lenders who provided financing of the Coach. The lawsuit was instituted to determine which of the four parties would bear the loss which was occasioned by the criminal conduct of the dealer, who is not a party to this action. The provisions of the California Uniform Commercial Code have direct application to this unfortunate situation. Because the Commercial Code provisions were not properly applied below, we reverse the judgment.

FACTS
In June 1991, Rick and Llana Hamm (the Hamms) purchased the Coach from a dealership in Oregon. The John Deere Company, predecessor in interest to Deere Credit, Inc. (Deere), provided the financing for the Hamms. The Hamms executed a written consumer loan contract and security agreement (the Hamm Agreement) wherein they promised to pay the John Deere Company approximately $144,000.
On or about November 1, 1992, the Hamms entered into a written agreement with Sunset Motors, whereby the Hamms were to purchase a new Monaco motor home from Sunset Motors. Sunset Motors was to take the Coach as a trade-in, in partial payment of the down payment on the Monaco motor home. During the second week of November, the Hamms delivered the Coach to Sunset Motors so that it could be shown to prospective buyers.
On or about November 20, 1992, Sunset Motors and Robert E. and Betty Gordon (the Gordons) executed a conditional sales contract for purchase of the Coach. The Gordons took possession of the motor home three days later, on November 23. Financing for the Gordons' purchase of the Coach was arranged by the predecessor in interest of Gentra Capital Corporation (Gentra). Gentra paid all of the financing proceeds directly to Sunset Motors, without investigating whether a prior lender had a security interest in the Coach.
Sunset Motors failed to pay off Deere's lien on the Coach. Instead, Sunset Motors pocketed the money and subsequently filed for bankruptcy.
*1327 The Gordons never received title to the Coach from the Department of Motor Vehicles. Indeed, Deere continues to be the registered lienholder of the Coach.
The Gordons filed a complaint for declaratory relief, interpleader and specific performance against the Hamms. The Hamms cross-complained against the Gordons, Gentra, Sunset Motors, and Deere for indemnity and conversion.[1] Deere cross-complained against the Hamms, the Gordons, and Gentra, seeking to recover the balance due on its loan and damages for conversion of its collateral.
The matter was tried to a jury. After several days of testimony, the trial court determined that the principal issue regarding Deere's lien was whether the Hamm/Sunset Motors transaction was a sale, exchange, or other disposition of the Coach under California Uniform Commercial Code[2] section 9306, subdivision (2). That statute provides that a lender who authorizes a sale, exchange, or other disposition of its collateral may lose its security interest in the collateral. The court found, as a matter of law, that the Hamms' delivery of the Coach to Sunset Motors was not a sale or exchange, nor a consignment or conditional sales contract, and that the Coach did not become part of Sunset Motors' inventory. However, the court determined as a matter of law that, if the transaction were an "entrustment," it would constitute a "disposition" under section 9306, subdivision (2).
Based on the court's conclusions of law, the following issues were presented to the jury in a special verdict form: (1) Did the Hamms entrust the Coach to Sunset Motors? (2) Did Deere authorize the entrustment? (3) Were the Gordons buyers in the ordinary course of business? (4) Did the Gordons or Gentra convert the Coach? (5) Did the Hamms breach the Hamm Agreement?
The jury found that the Hamms did entrust the Coach to Sunset Motors, that Deere authorized the entrustment, and that the Gordons were buyers in the ordinary course of business. Consequently, neither the Gordons nor Gentra converted the Coach. In addition, the jury found for the Hamms on the breach of contract issue. Judgment was entered against Deere absolving the Hamms of any responsibility to repay Deere's loan and extinguishing Deere's lien on the Coach. Deere's posttrial motions for judgment notwithstanding the verdict and new trial were denied. Deere appealed the judgment and post trial orders.
Following entry of judgment, the Hamms, as the prevailing party in the breach of contract cause of action, filed a "Motion to Fix Attorney's Fees *1328 Awardable as Item of Costs." In response, Deere acknowledged that the Hamms had prevailed on the claim for breach of contract. Nevertheless, the trial court denied the motion for attorney's fees, as well as a subsequent motion for reconsideration. The Hamms appeal those rulings.

DISCUSSION
The jury found that the Hamms entrusted the Coach to Sunset Motors. "`Entrusting' includes any delivery and any acquiescence in retention of possession for the purpose of sale, obtaining offers to purchase, locating a buyer, or the like, regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law." (§ 2403, subd. (3).) The jury also determined that the Gordons were buyers in the ordinary course of business: "`Buyer in ordinary course of business' means a person who in good faith and without knowledge that the sale to him or her is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind [i.e., a dealer] but does not include a pawnbroker." (§ 1201, subd. (9).) Those two findings are not subject to dispute.
Section 2403 sets forth the legal effect of an entrustment: "Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in the ordinary course of business." (§ 2403, subd. (2), italics added.) Sunset Motors was a dealer of motor coaches; the Gordons were buyers in the ordinary course of business. (1) Consequently, as a result of the Hamms' entrustment of the Coach to Sunset Motors, the Gordons received all rights that the Hamms had in the Coach. However, the Hamms' interest in the Coach was subordinate to Deere's lien. Section 2403, subdivision (2) empowers the dealer of an entrusted vehicle to transfer all right of the entruster to a buyer in the ordinary course. Consequently, the mere fact that the Gordons received the Hamms' interest in the Coach does not mean that Deere had no lien rights superior to the Gordons' rights.
Section 2403, subdivision (4) provides that the rights of a lienholder are to be determined in accordance with the division of the California Uniform Commercial Code dealing with secured transactions, that is, article 9. And article 9 provides that a purchaser takes title to property subject to any perfected security interest, except in two limited circumstances: The lien does not survive the sale of the property (1) when the secured creditor authorizes the sale, exchange, or other disposition of the collateral free of the *1329 creditor's lien (§ 9306), or (2) when the buyer purchases from a dealer who created the security interest. (§ 9307.) We consider each of these exceptions in turn.
Section 9307, subdivision (1) is concerned with security interests in personal property that is transferred to a buyer in the ordinary course of business. That section provides: "A buyer in ordinary course of business ... takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence." This section is of no help to the Gordons, since Deere's security interest was created not by the Gordons' seller (Sunset Motors), but by the Hamms when they purchased the Coach in 1991. Indeed, even if the Hamms were deemed the "seller" of the Coach, the Gordons would not benefit. The Hamms were not in the business of dealing in motor coaches; consequently, the Gordons would not be buyers in the ordinary course if they purchased the Coach directly from the Hamms.
Professors White and Summers in 4 Uniform Commercial Code (4th ed 1995) Priority Conflicts, section 33-16, page 367 discuss the interplay of sections 2403 and 9307, using a factual situation found in Security Pacific Nat. Bank v. Goodman (1972) 24 Cal. App.3d 131 [100 Cal. Rptr. 763]. The professors write: "A hypothetical based on Security Pacific National Bank v. Goodman shows how 2-403 and 9-307 can come into play. Bank perfects a security interest in Redinger's boat. Redinger in turn delivers the boat to Jeffries, a boat dealer, apparently in trade toward a new craft to be selected later by Redinger. Without making any selection, Redinger [dashes off] on a trip to ... Japan. Jeffries sells the boat to a buyer in the ordinary course of business. We now have a three-cornered dispute: buyer in the ordinary course v. Redinger (as to debtor's equity) and buyer in the ordinary course v. Bank (as to the security interest). The first dispute should be governed by 2-403 and the second dispute by 9-201, 9-306(2) and 9-307. In the hypothetical we posed, the buyer will take free of the debtor's equity (for he is the buyer of an `entrusted' chattel under 2-403(2)) but he will not take free of Bank's security interest (for his seller did not `create' the security interest and so he fails to fit within 9-307(1))." (Italics added, fn. omitted.)
Similarly, in In re Sunrise R.V. Inc. (Bankr. E.D. Cal. 1989) 105 B.R. 587, the buyer purchased from a used car dealer a motor vehicle subject to an undisclosed security interest created by the previous owners. The dealer filed for bankruptcy, and the buyer sued to impose a priority lien on certain cash in the possession of the dealer. The holder of the prior security interest moved the bankruptcy court to recover from the same funds. The court held that the buyer who purchased the motor vehicle from the used car dealer, *1330 albeit in good faith, did not take title free and clear of the security interest created by the previous owner. The court stated: "... the Commercial Code will not generally insulate a good faith purchaser of a used vehicle from the claim of a lienholder whose lien on said vehicle was never satisfied due to the default of an insolvent dealer. [¶] ... [¶] ... Because [the dealership] did not `create' the security agreement ... [the prior lienholder's] interest will not be affected by the mechanics of [section] 9307(1)." (Id. at p. 591, citations and italics omitted.)
Section 9306, subdivision (2) provides: "[A] security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise...." Further, "A `sale' consists in the passing of title from the seller to the buyer for a price (Section 2401)." (§ 2106, subd. (1).) "... `Buying' may be for cash or by exchange of other property or on secured or unsecured credit...." (§ 1201, subd. (9).) Thus, a cash or credit sale, as well as an exchange of other property, both involve the passing of title. An entrustment, on the other hand, does not involve the passing of title. To the contrary, it refers to the transfer of possession of an asset for the purpose of showing the property to prospective buyers and procuring offers to purchase. (§ 2403, subd. (3).) Consequently, the trial court erred in concluding as a matter of law that an entrustment constitutes a "disposition" under section 9306. While the jury determined that Deere authorized the Hamms' entrustment of the Coach to Sunset Motors, the question properly at issue below was whether or not Deere authorized the sale of the Coach to the Gordons.
As the March 10, 1990, permanent editorial board's comment No. 3 to Commercial Code section 9-306(2) makes clear, "A transferee will acquire the collateral free and clear of a pre-existing security interest only if the disposition of the collateral by the debtor was authorized by the secured party free and clear of the secured party's security interest. If the disposition was not authorized by the secured party, or was authorized by the secured party subject to the secured party's security interest, the transferee will not acquire the collateral free and clear of the security interest." (3A West's U. Laws Ann., U. Com. Code (1992 ed.) § 9-306(2), p. 166.) And indeed, this interpretation of the statute is eminently sensible. Absent a contractual restriction, a secured creditor has no right or power to interfere in its borrower's decision to sell the collateral, and no interest in doing so. The lender's sole legitimate interest in the sale of the collateral is to ensure that its loan is repaid, and to determine whether or not it will rely on the collateral for satisfaction of the borrower's obligations.
Thus, the central issue regarding the effect on Deere's lien rights of the sale of the Coach to the Gordons was whether or not Deere authorized the *1331 sale of the Coach free and clear of its lien. And there is not a scintilla of evidence to support an affirmative finding on that issue. Indeed, it is undisputed that Sunset Motors delivered the Coach to the Gordons on November 23, 1992, the day before Deere first learned that the Hamms had negotiated a trade-in of the Coach with Sunset Motors. Neither the Hamms, the Gordons, or Sunset Motors ever sought Deere's authorization to sell the Coach free and clear of Deere's lien. On these undisputed facts, it is not logically possible to find that Deere authorized Sunset Motors to sell the Coach free and clear of its lien. Consequently, we conclude as a matter of law that the Gordons took the Coach subject to Deere's lien.[3]
Also lacking in all evidentiary support is the jury's finding that the Hamms did not breach the Hamm Agreement, and the trial court's entry of judgment for the Hamms on that issue. The Hamm Agreement obligated the Hamms to make monthly payments to Deere; once the loan was repaid, Deere was required to relinquish its security interest in the Coach. The Hamms argue that Deere authorized the sale of the Coach (which of course the Hamms had every right to sell with or without Deere's permission),[4] and in so doing, breached its obligation to the Hamms to protect their title to the vehicle. However, Deere had no obligation to protect the Hamms' title. Indeed, its primary contractual obligation had been performed when it lent the Hamms the money to purchase the Coach. Deere's sole remaining obligation, to release its lien upon payment in full of the loan balance, was not compromised by any action on the part of Deere; in fact, Deere remains ready, willing and able to fulfill that obligation if and when the Hamms' loan is repaid. Because the uncontroverted evidence at trial established that the Hamms breached the Hamm Agreement by ceasing to make monthly payments thereunder, the judgment in favor of the Hamms must be reversed.

SUMMARY
In sum, this case is particularly difficult factually, because the four parties to this lawsuit are not morally blameworthy, yet someone must suffer the loss occasioned by the absent thief. Legally, however, the case is simple. A *1332 perfected security interest in collateral attaches to the collateral and survives the sale, exchange, or other disposition of the collateral unless the secured party affirmatively authorizes the transfer free and clear of the secured party's lien.
As a consequence of our ruling today, the Gordons own the Coach free and clear of any claim of the Hamms, but Deere has a perfected security interest in the Coach prior in time to Gentra's security interest. Additionally, Deere is entitled to recover damages against the Hamms for breach of the Hamm Agreement.

DISPOSITION
The judgment in favor of the Gordons is affirmed insofar as it determines that the Gordons are buyers in the ordinary course of business and take the Coach free and clear of any liens or claims of the Hamms or Sunset Motors. The judgment in favor of the Gordons, Deere, and Gentra on the Hamms' causes of action for indemnity and conversion is affirmed. The judgment in favor of the Gordons and the Hamms on Deere's cross-complaint for conversion is affirmed. The judgment declaring that the Gordons take the Coach free and clear of any liens or claims of Deere is reversed, and the court is instructed to enter judgment declaring that Deere has a perfected security interest in the Coach prior to Gentra's security interest. The judgment in favor of the Hamms on Deere's cross-complaint for breach of contract is reversed, and the matter is remanded to the trial court for a determination of the damages to which Deere is entitled and to enter judgment accordingly. Because the Hamms are no longer the prevailing party in this action, their appeal of the trial court's denial of their motion to fix attorney's fees is moot.
The parties are to bear their own costs of appeal.
Turner, P.J., and Grignon, J., concurred.
The petition of appellants Rick Hamm et al. for review by the Supreme Court was denied August 12, 1998.
NOTES
[1] An additional cause of action for lender negligence was dismissed prior to trial.
[2] Further statutory references are to that code.
[3] The Hamms argue that on November 24, 1992, when Deere learned of the prospective trade-in of the Coach, Gentra's check to Sunset Motors had been deposited into Sunset Motors bank account and may have still been available to pay off Deere's lien had Deere immediately put Sunset Motors into receivership. This argument supposes that Deere had some duty to the Hamms to do so. The trial court ruled, correctly, that the Hamms could not state a cause of action for negligence against Deere.
[4] The fact that such a sale would constitute a default under the Hamm Agreement imposed no legal impediment to the sale. Indeed, the contract provision at issue, to the effect that the Hamms "will be in default under this Agreement if [they] try to sell, rent, transfer or give somebody else an interest in the [Coach]" is simply a (rather inartfully drafted) due-on-sale acceleration clause.