[Civ. No. 23907. Third Dist. Apr. 17, 1985.]

JEWELL E. BOHANNON, Plaintiff and Appellant, v.
AETNA CASUALTY AND SURETY COMPANY, Defendant and
Respondent.

COUNSEL

Moore, Crawford, Stefanki & Block and Lawrence N. Hensley for Plaintiff and Appellant.

Bolling, Walter & Gawthrop and George E. Murphy for Defendant and Respondent.

OPINION

**PUGLIA, P. J.**—In this action to determine coverage under a liability insurance policy, plaintiff Jewell Bohannon appeals from summary judgment entered in favor of defendant Aetna Casualty and Surety Company (Aetna). Bohannon sought a declaration that Aetna was obligated to defend him in a personal injury action brought by a pedestrian who had been injured when struck by a 1965 Ford Mustang driven by Bohannon's daughter. The personal injury action sought to establish Bohannon's liability under theories of ownership, negligent entrustment and negligent maintenance of the Mustang.

The facts underlying this appeal are undisputed. When the accident occurred on November 23, 1982, Bohannon was a named insured under an automobile insurance policy issued by Aetna, but the Mustang was not described therein as a covered vehicle. On June 23, 1981, Bohannon had requested that the Mustang be deleted from the insurance coverage. Sometime prior to March 1982, he gave the vehicle to his daughter for her permanent use. Bohannon endorsed the pink slip and delivered it to his daughter on November 20, 1982, releasing his interest in the vehicle. However, at the time of the accident three days later, ownership had not been transferred on the records of the Department of Motor Vehicles (Department) and Bohannon was still the registered owner of the Mustang.

 The question here is whether Bohannon "owned" the Mustang at the time of the accident within the meaning of an exclusionary clause in Aetna's insurance policy. As we conclude that he did, we shall affirm summary judgment in Aetna's favor.

The insurance policy contains an omnibus coverage clause: "We [Aetna] will pay damages for bodily injury or property damage for which any *covered person* becomes legally responsible because of an auto accident. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. . . . [¶] *'Covered person'* as used in this Part means: 1. You or any *family member* for the ownership, maintenance or use of any auto or *trailer.*" (Italics in original.) Aetna concedes that Bohannon is a "covered person" within the meaning of this clause and relies upon exclusion 9 of the policy to deny coverage. Exclusion 9 provides: "We [Aetna] do not provide Liability Coverage: . . . [¶] 9. For the ownership, maintenance or use of any vehicle, other than *your covered auto,* which is owned by you or furnished or available for your regular use." (Italics in original.) Since "your covered auto" is defined as "any vehicle shown in the declarations" and Bohannon had caused the Mustang to be deleted from the declarations, the exclusion operates to preclude liability coverage for the Mustang if Bohannon "owned" the vehicle at the time of the accident. (See *Giovanna* v. *Vigilant Insurance Co.* (1984) 156 Cal.App.3d 368, 370 [202 Cal.Rptr. 364].)

Bohannon contends, however, that the meaning of "ownership" as used in the coverage clause differs from its meaning as used in exclusion 9. He argues that coverage clauses are to be interpreted broadly in favor of indemnity for loss, and therefore as registered owner of the Mustang on the files of the Department at the time of the accident, he must be deemed its owner and entitled to coverage within contemplation of the omnibus coverage clause; on the other hand, since exclusions are to be interpreted narrowly against the insurer, he insists that because he had at the time of the accident divested himself of possession and control of the Mustang, he was not then its owner under "ordinary principles of personal property law" nor, accordingly, within contemplation of exclusion 9. While the general principles upon which this construct is premised are undebatable (see *Reserve Insurance Co.* v. *Pisciotta* (1982) 30 Cal.3d 800, 807-808 [180 Cal.Rptr. 628, 640 P.2d 764]), they do not require that we apply antonymous interpretations of the word "ownership" as it appears in different provisions of the same policy.

■ "Ownership" has different meanings, depending on the context in which the word appears and the circumstances in which it is used. (*Everly* v. *Creech* (1956) 139 Cal.App.2d 651, 657-658 [294 P.2d 109], citing *Pacific Coast etc. Bank* v. *Roberts* (1940) 16 Cal.2d 800, 805-806 [108 P.2d 439].) ■ For purposes of imposing liability under the state financial responsibility laws (Veh. Code, § 17150), there may be several owners of a vehicle at any one time. In particular, both (1) the transferor of an automobile who, for failure to notify the Department of the transfer as pre-

scribed by Vehicle Code section 5600 et seq., remains the "registered owner" (see Veh. Code, § 505) and (2) the transferee who has possession and control of the automobile are deemed to be owners as to third parties injured by the use of the automobile. (*Uber* v. *Ohio Casualty Ins. Co.* (1967) 247 Cal.App.2d 611, 615 [55 Cal.Rptr. 720]; *Ohio Cas. Ins. Co.* v. *Aetna Ins. Co.* (1978) 85 Cal.App.3d 521, 523 [149 Cal.Rptr. 562]; see also *Stoddart* v. *Peirce* (1959) 53 Cal.2d 105, 115 [346 P.2d 774]; *Universal Underwriters Ins. Co.* v. *Gewirtz* (1971) 5 Cal.3d 246, 247 [95 Cal.Rptr. 617, 486 P.2d 145].)

■ Bohannon contends that, even though he was the registered owner of the Mustang and thus deemed an owner under the financial responsibility laws (and, he argues, the omnibus coverage clause), he was not its owner for purposes of exclusion 9. He asserts that the average person understands an owner to be the person in possession and control of a vehicle and, therefore, the ambiguity of the word "owned" as used in the exclusionary clause must be resolved in his favor and against the insurer-draftsman. The argument rests on the false assumption that only one meaning of "owned" is reasonably permissible under the circumstances.

■ "The word 'owner,' as applied to motor vehicles, is commonly understood to designate the person in whom title is vested either as legal [or equitable] owner or as registered owner." (*Martin* v. *State Farm Mutual Auto. Ins. Co.* (1962) 200 Cal.App.2d 459, 469 [19 Cal.Rptr. 364]; see also *Everly* v. *Creech, supra,* 139 Cal.App.2d at p. 658.) Since well-settled law makes all such owners simultaneously liable to insured third parties (see *Stoddart* v. *Peirce, supra,* 53 Cal.2d at p. 115), the courts have long interpreted the term "owner" as used in liability insurance policies to encompass the same meanings. (*Traders etc. Ins. Co.* v. *Pac. Emp. Ins. Co.* (1955) 130 Cal.App.2d 158, 164 [278 P.2d 493]; *Everly* v. *Creech, supra,* 139 Cal.App.2d at p. 658; *Uber* v. *Ohio Casualty Ins. Co., supra,* 247 Cal.App.2d at p. 615; *Allstate Ins. Co.* v. *Chinn* (1969) 271 Cal.App.2d 274, 278-279 [76 Cal.Rptr. 264]; see also *Ohio Cas. Ins. Co.* v. *Aetna Ins. Co., supra,* 85 Cal.App.3d at p. 523.) "[A]ll applicable law enters into and is a part of every contract by inference . . . and this is no exception." (*Traders etc. Ins. Co.,* at p. 164; Civ. Code, § 1656.) It would be "paradoxical indeed" if the registered owner is held to be an "owner under the law but not under his insurance contract." (See *Traders etc. Ins. Co.,* at p. 164.)

■ Even if we were to assume that the word "owned" is ambiguous under the circumstances of this case, the judicial precept that unclear language in an insurance exclusionary clause is to be construed narrowly against the insurer serves only to protect the insured's reasonable expecta-

tions of coverage. (*Reserve Insurance Co.* v. *Pisciotta, supra,* 30 Cal.3d at pp. 807-808.) ■ Whether Bohannon's expectations under the contract are reasonable is a question of law. (*Wolf Machinery Co.* v. *Insurance Co. of North America* (1982) 133 Cal.App.3d 324, 329 [183 Cal.Rptr. 695].) Bohannon could have had no reasonable expectation that coverage of the Mustang would continue after he specifically deleted it from his insurance declaration. In fact, Bohannon admitted in his deposition that he did not consider the Mustang to be insured thereafter. Moreover, Aetna cannot be said to have assumed the risk of providing coverage for liability arising out of Bohannon's "ownership" of the Mustang after he deleted it from the declarations as a "covered auto" and to that extent effected a reduction in his premium. Under Bohannon's construction of the policy, he could purchase several automobiles, give them to family members, and enjoy the benefits of coverage without ever having to pay premiums commensurate with the increased risk of insurance exposure. ■ " 'The courts will not indulge in a forced construction of an insurance policy so as to fasten a liability on the company which it has not assumed.' " (*Wolf Machinery Co., supra,* 133 Cal.App.3d at p. 328, quoting *St. Paul Fire & Marine Ins. Co.* v. *Coss* (1978) 80 Cal.App.3d 888, 896 [145 Cal.Rptr. 836].)

■ Bohannon finally argues that, because the personal injury action against him was not only for ownership liability but also for negligent maintenance and entrustment of the Mustang, Aetna was potentially liable under the insurance policy and therefore had a duty to defend him. He suggests that the evidence presented at the motion for summary judgment did not resolve whether there could have been negligent maintenance or entrustment of the Mustang prior to June 23, 1981, when the vehicle was a "covered auto" under the insurance policy. We are not impressed.

■ It is true that an insurer's duty to defend litigation brought against its insured is broader than its duty to indemnify; the insurer must provide a defense when it learns facts creating the potential for liability under the policy. (*Giddings* v. *Industrial Indemnity Co.* (1980) 112 Cal.App.3d 213, 217 [169 Cal.Rptr. 278], citing *Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 275-277 [54 Cal.Rptr. 104, 419 P.2d 168].) "But the insurer's obligation is not unlimited; the duty to defend is measured by the nature and kind of risks covered by the policy [citations]." (*Giddings,* at p. 218, citing inter alia *Gray,* at p. 275.) ■ The suggestion of potential liability arising out of the speculative possibility of Bohannon's "entrustment" of the Mustang to his daughter prior to June 23, 1981, with respect to an accident which occurred almost one and one-half years later is frivolous as well as farfetched. (See *Giddings, supra,* at p. 220.)

The judgment is affirmed.

Regan, J., and Blease, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 29, 1985.