[No. C011971. Third Dist. Mar. 1, 1993.]

CALIFORNIA STATE AUTOMOBILE ASSOCIATION, Plaintiff and Respondent, v.
JACQUES FOSTER, Defendant and Appellant.

**COUNSEL**

Dennis M. Wilson and Thomas D. Phillips for Defendant and Appellant.

McDonald, Saeltzer, Morris, Creeggan & Waddock, William O. Morris Gregory R. Madsen and Jon S. Allin for Plaintiff and Respondent.

**OPINION**

**EVANS, J.\***—In this declaratory relief action defendant Foster appeals from a summary judgment in favor of plaintiff insurer, urging he was not an "owner" of the motor vehicle herein, and as a consequence, does not fall within a coverage exclusion contained in the uninsured motorist provision of a policy issued by plaintiff. ■ The appeal presents one basic question: Is a person who parts with possession of a motor vehicle but retains registered title and an equitable interest, an owner within the meaning of a policy provision excluding from uninsured motorist coverage vehicles "owned" by an insured? Because the answer is yes, we shall affirm.[1]

Each party moved for summary judgment but the material facts are common to both motions. ■ We draw our own conclusions of law to determine whether summary judgment in favor of the insurer was proper. (*Suburban Motors, Inc.* v. *State Farm Mut. Auto. Ins. Co.* (1990) 218 Cal.App.3d 1354, 1359 [268 Cal.Rptr. 16].)

■ The policy in question, issued to Foster's relatives residing in the same household, provided coverage for damages caused by an "uninsured motor vehicle," but specifically excluded vehicles owned by the insured.

---

\*Retired Associate Justice of the Court of Appeal, Third District, sitting under assignment by the Chairperson of Judicial Council.

[1]A separate policy provision excludes owned but unlisted vehicles. Our conclusion that Foster was an owner applies with equal force to this provision. Both provisions are derived from the Uninsured Motorist Law. (See Ins. Code, § 11580.2, subds. (b), (c)(6).)

On September 19, 1988, there was an accident while Foster rode as a passenger on a motorcycle operated by Michael Smith, Foster had purchased the motorcycle about six months before the accident, but had not at that time received title.[2] Foster and Smith thereafter entered into an agreement by which Smith would buy the motorcycle, paying Foster $100 down and $100 at a later date, and it was agreed Foster would transfer his title after the second payment. Smith did not make the second payment before the accident and Foster did not transfer title to Smith.

The Vehicle Code defines an "owner" in part as "a person having all the incidents of ownership, including the legal title of a vehicle whether or not such person lends, rents, or creates a security interest in the vehicle; the person entitled to the possession of a vehicle as the purchaser under a security agreement . . . ." (Veh. Code, § 460; further unspecified section references are to this code.)[3]

Section 5600 provides that: "No transfer of the title or any interest in or to a vehicle registered under this code shall pass, and any attempted transfer shall not be effective," until the seller delivers to the DMV the certificate of ownership and the transfer fees. This requirement is vital to California's "full-title" registration scheme, whereby the title document demonstrates ownership. (See generally, *Suburban Motors, Inc., supra*, 218 Cal.App.3d at pp. 1361-1363.) ■ "California has laid down the rule that until the formalities required by the Vehicle Code are met, the vendor of an automobile under a conditional sales agreement for purposes of omnibus coverage in a policy of public liability insurance issued to the vendor is still the owner and the vendee is driving with his permission." (*Harbor Ins. Co.* v. *Paulson* (1955) 135 Cal.App.2d 22, 25-26 [286 P.2d 870]. See *Votaw* v. *Farmers Auto. Inter-Ins. Exchange* (1940) 15 Cal.2d 24, 27 [97 P.2d 958, 126 A.L.R. 538].)

■ Thus we conclude Foster, having failed to dispose of title to his vehicle, owned it.

Foster urges Civil Code section 654 excludes him from the definition of an "owner." That section provides in part: "The ownership of a thing is the right of one or more persons to possess and use it to the exclusion of others." Since Foster transferred possession to Smith, he urges he no longer had exclusive possession and thus was not an owner.

---

[2]Foster urges he never became an "owner" of the motorcycle because there is no evidence the Department of Motor Vehicles (DMV) was so notified. As will appear presently, such is not required.

[3]Even if one meets the statutory definition of an "owner" he or she may not necessarily be an "owner" under the insurance policy. But Foster does not urge the term "owner" in this policy is less expansive than the statute.

We disagree. Owners of chattels frequently lend them, borrow against them, or, as here, conditionally sell them. This does not mean that when a person loses the right to exclude others that person is no longer an "owner." Indeed, the statute speaks to the concept of "ownership," not to "owners," and provides that "one or more" persons may possess the item. As Foster tacitly admits, it has been held that the conditional buyer of a vehicle may be "an" owner if the requirements for title transfer are not met. (*Harbor Ins. Co., supra,* 135 Cal.App.2d at p. 28.) That does not mean the conditional seller is not also "an" owner. In *Bohannon* v. *Aetna Casualty & Surety Co.* (1985) 166 Cal.App.3d 1172 [212 Cal.Rptr. 848], we held (at pp. 1175-1176) there may be multiple "owners" of a vehicle when the seller fails to notify the Department of Motor Vehicles of the transfer and the buyer possesses the vehicle.

Foster urges "[u]nder ordinary and popular usage, a person who sells a vehicle to another and transfers possession is not the owner, even if he retains documentation of title as security." He urges that "[a]s between the conditional seller and the conditional buyer," the buyer is the owner. Because we have held that DMV records are not conclusive evidence of ownership (*Gates* v. *Levers* (1951) 108 Cal.App.2d 131, 133-134 [238 P.2d 143]; see *In re Marriage of Finnell* (1986) 182 Cal.App.3d 52, 56-57 [227 Cal.Rptr. 38]), this would be the result if Smith and Foster were involved in an action inter se. This is not such an action: Here Foster's retention of title makes him an owner. (See *Harbor Ins. Co., supra,* 135 Cal.App.2d at p. 28.)

Foster seeks to avail himself of the rule that an ambiguity in a policy will be construed against an insurer. Further, he maintains that the cases supporting the "multiple owner" doctrine involve policy coverage, not policy exclusions, therefore the "public policy" in favor of insurance coverage should be applied to his benefit.[4]

However, here the provisions relating to ownership are not ambiguous. The policy excluded from the definition of an uninsured motor vehicle a vehicle "owned by or furnished or available for the regular use of you or a

---

[4]Foster glosses over the fact that such "public policy" exists to protect innocent third parties (e.g., *Uber* v. *Ohio Casualty Ins. Co.* (1967) 247 Cal.App.2d 611, 616-617 [55 Cal.Rptr. 720]), not a person who refuses to obtain insurance for his vehicle, conditionally sells it and permits the uninsured conditional buyer to operate it and then tries to claim uninsured motorist benefits (under his relatives' policy) for an accident involving that vehicle. While the Legislature could adopt a "public policy" to protect persons such as Foster, it has not. The Legislature instead requires both drivers and owners to maintain insurance on a vehicle or otherwise comply with the financial responsibility law. (See §§ 16020, 16021.) Thus we do not believe an insured in Foster's place reasonably could conclude he or she was entitled to coverage. (See *Bohannon, supra,* 166 Cal.App.3d at pp. 1176-1177.)

relative; . . ." It has long been the rule that "For the purpose of determining liability insurance coverage, there may be several 'owners' of an automobile. [Citations.] The purchaser of an automobile need not comply with Vehicle Code requirements in order to become its owner under the terms of an insurance policy. [Citations.]" (*Allstate Ins. Co.* v. *Chinn* (1969) 271 Cal.App.2d 274, 278 [76 Cal.Rptr. 264].) The only reasonable construction of the term "owner" covers Foster, because he had yet to be paid for the motorcycle and thus had not transferred title to it.[5] (See *Mid-Century Ins. Co.* v. *Gardner* (1992) 9 Cal.App.4th 1205, 1211 [11 Cal.Rptr.2d 918] [a reasonable person would define the term "owner" as one who holds title to or possesses the property].) The policy is not ambiguous on this point. (*Allstate Ins. Co., supra,* 271 Cal.App.2d at p. 279. See *Uber* v. *Ohio Casualty Ins. Co.* (1967) 247 Cal.App.2d 611, 615-616 [55 Cal.Rptr. 720].) Because the policy is not ambiguous the rule of construction contended for does not apply. (*Interinsurance Exchange* v. *Velji* (1975) 44 Cal.App.3d 310, 314-315 [118 Cal.Rptr. 596].)[6]

Finally, Foster urges that there is a triable issue of fact whether he ever had title to the motorcycle. It appears the DMV records list as the owner of the motorcycle one Case. Foster urges the insurer is not entitled to summary judgment because it has not negated the possibility that the motorcycle was stolen from Case before Foster's predecessor (one Milligan) acquired it, and thus, neither Milligan nor Foster nor Smith are "owners." However, the authority relied on relates to security interests based on the full-title doctrine. (*Suburban Motors, Inc., supra,* 218 Cal.App.3d 1354.) Thus it may be that Case is the owner of the motorcycle vis-à-vis Foster or Smith. We assume arguendo this is a material fact, and that an insurer could decline to pay benefits (after refunding premiums) because its insured unknowingly purchased a stolen vehicle. In this action Foster admitted he purchased the motorcycle, then conditionally sold it to Smith. In light of this admission it was up to Foster to produce some evidence to impugn his own chain of title and the fact without more that Case presently appears on the DMV records as the owner does not give rise to an inference that the chain of title to Foster

---

[5]Foster repeatedly refers to his noncompliance with the "technical requirements" of title. But here the conditional sale was never completed; thus Foster's ownership stems from more than a technicality. (Cf. *Canadian Indem. Co.* v. *Motors Ins. Corp.* (1964) 224 Cal.App.2d 8, 18-19 [36 Cal.Rptr. 159] [sale complete despite failure to transfer title; therefore seller not an owner and his policy provides no coverage].)

[6]Further, assuming we found ambiguous the term "owner" as used in the policy or the statute we can think of no reasonable construction of that term which excludes Foster. (See *Bohannon, supra,* 166 Cal.App.3d at pp. 1176-1177.)

is sinister.[7] Thus the insurer's showing on the question of ownership was sufficient to negate Foster's case.

## DISPOSITION

The judgment is affirmed.

Puglia, P. J., and Scotland, J., concurred.

---

[7]Indeed, the numerous reported decisions in this area of the law over many years confirm that the practice of selling vehicles without notifying the DMV is widespread.