[No. C030006. Third Dist. Aug. 30, 1999.]

SINISNA SAVNIK et al., Plaintiffs and Respondents, v.
OPAL HALL, Defendant and Appellant.

## COUNSEL

Adams & Mason, Douglas P. Adams and John A. Mason for Defendant and Appellant.

Fritz Clapp for Plaintiffs and Respondents.

## OPINION

**CALLAHAN, J.**—Defendant Opal Hall appeals from an order denying her motion for judgment notwithstanding the verdict (JNOV)[1] following a jury verdict in favor of plaintiffs Sinisna Savnik and Michele Conant in their action for personal injuries as a result of an automobile accident.

Two questions are raised by this appeal: (1) was it error for the trial court to refuse to strike the noneconomic portion of plaintiff Savnik's damages by retroactively applying Proposition 213 (Civ. Code, § 3333.4) to the case at bar?; and (2) did Conant's status on the Department of Motor Vehicles (DMV) records as a registered owner of the vehicle conclusively establish her as an "owner" within the meaning of Proposition 213, thereby precluding submission of the ownership issue to the jury as a disputed issue of fact?

We conclude Savnik was barred from recovering his noneconomic damages by Proposition 213. On the other hand, Conant was properly awarded her noneconomic damages based on the jury's finding she was not the "owner" of the vehicle involved in the accident. We affirm in part and reverse in part.

### BACKGROUND

Plaintiffs Savnik and Conant filed a complaint for personal injury, alleging that on July 22, 1995, defendant so negligently drove her vehicle as to cause it to collide with the vehicle occupied by plaintiffs.

---

[1]An order denying a motion for JNOV is directly appealable. (Code Civ. Proc., § 904.1, subd. (a)(4); *Crotty* v. *Trader* (1996) 50 Cal.App.4th 765, 771 [57 Cal.Rptr.2d 818].)

On the date of the accident Savnik and Conant were living together. Savnik was driving a Chevrolet Suburban which he acquired with his own money the previous summer; Conant was a passenger. There was no liability insurance for the Suburban at the time of the accident.

Plaintiffs' lawsuit was filed on July 17, 1996. On November 7, 1996, the voters of California overwhelmingly passed Proposition 213 which, in part, prohibits uninsured owners from recovering noneconomic damages sustained as a result of an automobile accident arising out of the use, or operation of the uninsured vehicle.[2] Proposition 213, by its express terms, applies "to all actions in which the initial trial has not commenced prior to January 1, 1997." (Prop. 213, § 4; see *Yoshioka* v. *Superior Court* (1997) 58 Cal.App.4th 972, 979 [68 Cal.Rptr.2d 553] (*Yoshioka*).)

The case did not get to trial until April 29, 1998. Defendant, having discovered that both Savnik and Conant were listed in DMV records as registered owners of the Suburban, brought a motion *in limine* to exclude all evidence of noneconomic losses suffered by both plaintiffs. Plaintiffs countered that retroactive application of Proposition 213 to the case at bar would be unconstitutional. Plaintiff Conant also contended that Proposition 213 did not apply to her because she "did not have the incidents of ownership" and was unaware that DMV registration records showed her listed as an owner.

The matter came up in a pretrial chambers conference. The court tentatively ruled that evidence of noneconomic damages as to both plaintiffs could come in, but "both counsel are put on notice that if there are any economic [*sic*] damages awarded, I will grant a new trial. I'm doing this so as to eliminate the necessity of trying the case a second time should the Appellate Court rule that that prohibition against recovery by a noninsured would be in error and also by virtue of the fact that there's also an issue, as I understand it from counsel, as to whether Michele [Conant] was an owner. And if she were not an owner, then the prohibition [of] 3333.4 would not apply to her, . . ."

At trial, the parties stipulated that the Surburban Savnik was driving was uninsured. Conant testified that she and Savnik had been living together for

[2]Proposition 213 added Civil Code section 3333.4 which provides, in pertinent part: "(a) . . . [I]n any action to recover damages arising out of the operation or use of a motor vehicle, a person shall not recover non-economic losses to compensate for pain, suffering, inconvenience, physical impairment, disfigurement, and other nonpecuniary damages if any of the following applies:

"    .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"(2) The injured person was the owner of a vehicle involved in the accident and the vehicle was not insured as required by the financial responsibility laws of this state."

approximately one year at the time of the accident; that Savnik acquired the Suburban during that time; but that she never drove it because she had her own vehicle and it was a "three speed on the column," with which she lacked familiarity. Conant stated she was unaware Savnik had listed her name with the DMV as a registered owner, and did not discover that fact until recently.

Savnik testified that he chose to register the vehicle in his name and Conant's, because "we were getting together, and I felt that a vehicle and this such property, . . . should be in both of our names. I did it out of the goodness of my heart." He did not inform her of this decision and she did not sign any of the paperwork registering her as co-owner.

The case was tried without any prohibition on evidence of noneconomic damages. The court instructed the jury that it was to determine whether or not Conant was an owner of the vehicle in which she was a passenger at the time of the accident, because it "affects the amount of damages to which she is entitled."[3] Over defendant's objection, the jury was given an instruction stating "An 'owner' is a person having all the incidents of ownership, including the legal title of a vehicle." (Veh. Code, § 460; further section references are to the Vehicle Code unless otherwise indicated.) The jury was given verdict forms to determine the amount of economic and noneconomic damages suffered by each plaintiff.[4] It was also given the following special interrogatory: "Was MICHELE CONANT the owner of the 1967 Chevrolet Suburban at the time of the collision?"

The jury returned special verdicts awarding each plaintiff economic and noneconomic damages. It also returned a special finding that the Suburban was *not* owned by Conant at the time of the crash.

The court entered judgment in favor of each plaintiff for all of the damages (economic and noneconomic) found by the jury. Defendant filed a motion for JNOV, requesting that the court issue a new judgment rescinding the noneconomic damage component of the award as to each plaintiff, on the ground that recovery was barred by Proposition 213. The trial court denied the motion.

---

[3] The jury was not told about Proposition 213, or its effect on the case. Moreover, at the court's direction, both counsel refrained from any mention of insurance.

[4] Defendant stipulated to liability.

APPEAL

I

*Savnik's Damage Award*

Defendant contends Savnik's noneconomic damage award should have been stricken by the trial court under the force of Proposition 213. She is correct. There was no dispute that Savnik owned the Suburban. Proposition 213 was applicable to the present case because it was not tried before January 1, 1997. Recovery of noneconomic damages for Savnik was therefore barred, because at the time of the accident, he was "not insured as required by the financial responsibility laws of this state." (§ 3333.4, subd. (a)(2).)

■ Savnik's only rejoinder is that Proposition 213 should not be applied in a case such as this, where the accident took place and the lawsuit was filed before the initiative was enacted. His argument is two-pronged: (1) retroactive application was not intended by the voters, despite clear language that it would apply to all cases tried after January 1997; and (2) if the statute was so intended, retroactive application would be an unconstitutional deprivation of a vested right.

As Savnik admits, these arguments were rejected in the Second District's opinion in *Yoshioka, supra,* 58 Cal.App.4th 972.

*Yoshioka* held that the language of the initiative stipulating that it " 'shall apply to all actions in which the initial trial has not commenced prior to January 1, 1997' " manifested a clear intent for retrospective application. *(Yoshioka, supra,* 58 Cal.App.4th at p. 980, italics omitted.) The court's conclusion was underscored by ballot language which stated that " 'A Yes vote on this measure means: Uninsured drivers . . . at the time of an accident could *no longer sue* someone who was at fault for the accident for non-economic losses . . .' " *(id.* at p. 981, italics in original), indicating the statute was intended to preclude the filing of civil lawsuits based on events which had already taken place. *(Ibid.)*

The court also rejected a host of constitutional challenges, including the claim advanced by Savnik that retroactivity would strip uninsured plaintiffs of a "vested right" to full recovery of damages for pain and suffering. As the court observed, "numerous courts have held that the right to recover specific types of damages is not a vested right because such rights are created by state and common law independent from the Constitution. [Citations.] Therefore, a state and its people may alter such rights. Such alteration is only

forbidden when at the very least the party is deprived of *every reasonable method of securing just compensation.* This does not encompass instances where the plaintiff would not recover as much as he would have had the former rule continued. [Citation.]" (*Yoshioka, supra,* 58 Cal.App.4th at p. 982, italics in original.) Accordingly, ". . . although petitioner may not be able to recover as high a damage award as he would have prior to the initiative's passage, he still is legally entitled to some form of relief. Proposition 213 deprives petitioner of a certain type of damages (noneconomic, i.e., pain and suffering), but petitioner cannot claim that he is deprived of every reasonable method of securing just compensation. He is still able to obtain complete recovery for his economic damages." (*Ibid.*)

Finally, the court concluded that the initiative served an important state interest which justified its retroactivity, i.e., promoting the voters' legitimate interests in restoring balance to our justice system and reducing the cost of mandatory insurance; nor is retroactive application inherently unfair, the court held, since California has long required drivers to purchase auto insurance. (*Yoshioka, supra,* 58 Cal.App.4th at pp. 983-985.)

Recently, in *Honsickle* v. *Superior Court* (1999) 69 Cal.App.4th 756, 765 [82 Cal.Rptr.2d 36], the court concurred in the reasoning of *Yoshioka* and concluded that it reached the correct result. We consider *Yoshioka* well reasoned and reject plaintiffs' invitation to part company with it. The case is controlling and dispositive.[5]

The trial court erred in failing to strike the noneconomic damages portion of the judgment in favor of Savnik in accordance with the mandate of Proposition 213.

## II

### *Conant's Damage Award*

The evidence showed that Savnik registered the Suburban in the name of both himself and Conant, without her knowledge or participation. Conant never drove the vehicle and had her own car. The jurors were given

---

[5]Savnik claims *Yoshioka* is "distinguishable" because the case came up on petition for writ of mandate rather than on appeal after a judgment. We fail to see how the procedural distinction makes any difference with regard to the substantive issues which were decided adversely to plaintiffs.

Savnik also cites as error the court's refusal to grant a pretrial motion to advance the case for trial. But since plaintiffs failed to take a protective cross-appeal, they have no standing to raise this issue. (Eisenberg et al., Civil Appeals and Writs (The Rutter Group 1998) ¶ 3:169, pp. 3-36.18 to 3-36.19.)

plaintiffs' proposed instruction that "An owner is a person having all the incidents of ownership, including the legal title of the vehicle. [¶] A certificate of registration does not necessarily or conclusively establish true ownership." They returned with a special verdict finding that Conant did not own the vehicle. Accordingly, the trial court refused to strike any portion of her damage award.

Defendant claims Conant should have been deemed an "owner" for the purposes of Proposition 213 *as a matter of law,* merely by virtue of "her undisputed status as a registered owner of the uninsured vehicle." We disagree.

Proposition 213 bars recovery of noneconomic damages if "The injured person was *the owner* of a vehicle involved in the accident and the vehicle was not insured . . . ." (Civ. Code, § 3333.4, subd. (a)(2), italics added.) The word "registered" appears nowhere in the statute.

Ordinarily courts give the words of a statute the usual, everyday meaning they have in lay speech. (*Alexander* v. *Superior Court* (1993) 5 Cal.4th 1218, 1225 [23 Cal.Rptr.2d 397, 859 P.2d 96].) This rule is subject to the exception that, ". . . when a word used in a statute has a well-established *legal* meaning, it will be given that meaning in construing the statute. This has long been the law of California: 'The rule of construction of statutes is plain. Where they make use of words and phrases of a well-known and definite sense in the law, they are to be received and expounded in the same sense in the statute.' " (*Arnett* v. *Dal Cielo* (1996) 14 Cal.4th 4, 19 [56 Cal.Rptr.2d 706, 923 P.2d 1], italics in original, quoting *Harris* v. *Reynolds* (1859) 13 Cal. 514, 518.)

As the trial court recognized, "owner" is already defined in the Vehicle Code. Section 460 defines "owner" as "a person having all the incidents of ownership, including the legal title of a vehicle . . . ." By contrast, a "registered owner" is simply one who is listed on the certificate issued pursuant to the DMV's registration requirement. (§ 4000 et seq.) "Registered owner" and "owner" therefore have separate and distinct *legal meanings.* In accordance with settled law, we are obligated to give the word "owner" its established legal meaning, i.e., one who has the incidents of ownership, including legal title. This definition also happens to correspond with the ordinary meaning of the word in the everyday world. An "owner" is one who exercises the incidents of ownership—dominion, control, right, interest, and title. (Cf. *Mid-Century Ins. Co.* v. *Gardner* (1992) 9 Cal.App.4th 1205, 1211 [11 Cal.Rptr.2d 918].) Insertion of the word "registered" in front of the word "owner" by judicial decree would violate the principle that if the

words of a statute are clear, a court is not free to add to or alter them. (*Trujillo* v. *North County Transit Dist.* (1998) 63 Cal.App.4th 280, 287 [73 Cal.Rptr.2d 596].)

Defendant urges that the remedial purpose of Proposition 213 can best be realized by construing "owner" as registered owner in parallel fashion to the way "owner" has been interpreted in section 17150, the "owner liability" statute.

■ We note initially that defendant's proposed inquiry into the purpose behind the statute is unnecessary—where the language is clear and unambiguous, ". . . no court need, or should, go beyond that pure expression of legislative intent." (*Kobzoff* v. *Los Angeles County Harbor/UCLA Medical Center* (1998) 19 Cal.4th 851, 861 [80 Cal.Rptr.2d 803, 968 P.2d 514]; accord, *Delaney* v. *Superior Court* (1990) 50 Cal.3d 785, 798 [268 Cal.Rptr. 753, 789 P.2d 934].) However, it is appropriate to consider whether the plain meaning of the words used are so fundamentally in conflict with the purpose of the statute, that they must be disregarded. (See *DaFonte* v. *Up-Right, Inc.* (1992) 2 Cal.4th 593, 601 [7 Cal.Rptr.2d 238, 828 P.2d 140] ["The plain meaning of words in a statute may be disregarded only when that meaning is ' "repugnant to the general purview of the act," or for some other compelling reason . . . .' "].)

Under section 17150, the "owner liability statute," a vehicle "owner" is liable for injuries caused by the negligence of anyone who operates the vehicle with the owner's express or implied permission. Imputation of liability under this section has been interpreted as generally applicable only to a registered owner. (*Campbell* v. *Security Pac. Nat. Bank* (1976) 62 Cal.App.3d 379, 385 [133 Cal.Rptr. 77].) " 'There is no doubt that the word "owner" as used in [section 17150] for the purpose of creating a liability thereunder, is not synonymous with that word as used in the ordinary sense of referring to a person or persons whose title is good as against all others. Under the Vehicle Code there may be several such "owners" at any one time. One or more persons may be an "owner," and thus liable for the injuries of a third party, even though no such "owner" possesses all of the normal incidents of ownership.' " (*Springmeyer* v. *Ford Motor Co.* (1998) 60 Cal.App.4th 1541, 1571-1572 [71 Cal.Rptr.2d 190], citing *Stoddart* v. *Peirce* (1959) 53 Cal.2d 105, 115 [346 P.2d 774].) Thus, in order to relieve himself of imputed liability under section 17150, a registered owner who transfers his vehicle to someone else must strictly comply with section 5602 by endorsing and transferring the certificate of ownership to the new owner and notifying the DMV of the transfer. (*Laureano* v. *Christensen* (1971) 18 Cal.App.3d 515, 520-521 [95 Cal.Rptr. 872].)

This broad interpretation of the word "owner," which ordinarily holds registered owners vicariously liable for injuries caused by negligent operators, fulfills the purpose of the statute, which is to protect innocent parties who are injured by negligently operated vehicles. (*Springmeyer* v. *Ford Motor Co., supra,* 60 Cal.App.4th at pp. 1570-1571.) Such innocent parties are entitled to rely on record indicia of ownership in the public register. (*Id.* at p. 1571.) However, no comparable policy objective is served by construing the word "owner" in Proposition 213 the same way.

■ The purpose of Proposition 213 is to "limit recovery of noneconomic damages for those drivers that break the law" thereby encouraging uninsured owners and motorists to purchase liability insurance and ensuring that "law abiding citizens will no longer be required to carry the burden of paying for those citizens that *choose to directly defy the current state of the law.*" (*Yoshioka, supra,* 58 Cal.App.4th at pp. 991, 993, italics added.)

The concept of deterring willful defiance of the mandatory insurance requirement imports a scienter requirement, i.e., that the penalty on recovery is meted out to those who *knowingly* break the law. This policy would be frustrated if the word "owner" were construed to mean those persons showing up on DMV registration records without regard for the other incidents of ownership. Imposing such a forfeiture on those whose names appear on the vehicle registration certificate regardless of any other indicia of ownership thus *punishes the innocent and well as the guilty* by creating a species of strict liability.[6] We refuse to accept the proposition that the voters intended such an unfair result. We instead conclude the voters intended "owner" to mean those persons who fit the commonly understood meaning of the word, and one harmonious with its definition contained in section 460. The jury instruction based on section 460 was proper.

Defendant advances the remarkable claim that even if the ownership instruction was correct, the evidence conclusively established Conant as an owner for purposes of Proposition 213. She is incorrect.

Vehicle ownership is a fact question for the jury to determine in light of all the circumstances. (*Kaley* v. *Catalina Yachts* (1986) 187 Cal.App.3d

---

[6]It is doubtful such an interpretation of the word "owner" would survive constitutional scrutiny. " 'Due process principles require reasonable notice and opportunity to be heard before governmental deprivation of a significant property interest.' " (*Cohan* v. *City of Thousand Oaks* (1994) 30 Cal.App.4th 547, 554-555 [35 Cal.Rptr.2d 782], citing *Horn* v. *County of Ventura* (1979) 24 Cal.3d 605, 612 [156 Cal.Rptr. 718, 596 P.2d 1134].) *Yoshioka* rejected a procedural due process attack on Proposition 213 by pointing out the uninsured driver's culpability was already established by "choos[ing] to drive" without insurance, thus dispensing of any "justifiable defense that would require a hearing." (58 Cal.App.4th at p. 989.) If Conant's status as a registered owner created a conclusive presumption of ownership which automatically triggered the damage penalty imposed by Proposition 213, the result could be the deprivation of a significant property interest without a showing of culpability.

1187, 1198 [232 Cal.Rptr. 384].) Registration is merely one "incident" of ownership. "A certificate of registration does not necessarily or conclusively establish true ownership; . . ." (*Rody* v. *Winn* (1958) 162 Cal.App.2d 35, 39 [327 P.2d 579]; see also *California State Automobile Assn.* v. *Foster* (1993) 14 Cal.App.4th 147, 151 [17 Cal.Rptr.2d 635] ["DMV records are not conclusive evidence of ownership"].) Since Conant did not contribute any funds to buy the Suburban, never drove it, and had no knowledge that her name was listed on the registration certificate, the jury's finding that she was not its "owner" was abundantly supported. The trial court properly refused to reduce Conant's noneconomic damage award.

### Disposition

The order denying the motion for JNOV is vacated. The court shall enter a new order partially granting defendant's motion by striking the award to Savnik of $6,000 in noneconomic damages, and otherwise denying the motion. The court shall direct the clerk to enter a modified judgment in accordance with this order. Plaintiff Conant shall recover costs on appeal from defendant. Defendant shall recover costs on appeal from plaintiff Savnik.

Blease, Acting P. J., and Sims, J., concurred.