**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1053-22

BRUCE HENDERSON,

     Plaintiff-Appellant,

v.

FRANK MARTINEZ and
NEW JERSEY TRANSIT,

     Defendants-Respondents.

_____

Submitted October 2, 2024 – Decided October 16, 2024

Before Judges Mayer and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-1893-19.

Bruce Henderson, appellant pro se.

Matthew J. Platkin, Attorney General, attorney for respondents (Janet Greenberg Cohen, Assistant Attorney General, of counsel; Jae K. Shim, Deputy Attorney General, on the brief).

PER CURIAM

Plaintiff Bruce Henderson appeals from an October 20, 2022 order denying plaintiff's motion to disqualify the judge presiding over the matter, granting summary judgment in favor of defendants New Jersey Transit Corporation (NJT) and Frank Martinez (collectively, defendants), and dismissing plaintiff's complaint with prejudice. We affirm.

We recite the facts from the motion record and evidentiary hearing conducted on October 20, 2022.

On October 14, 2017, while driving a 2006 Cadillac CTS (Cadillac), plaintiff's car collided with a bus operated by Martinez and owned by NJT. Plaintiff suffered injuries as a result of the accident.

In July 2019, plaintiff filed a personal injury action against defendants. After the close of discovery, defendants moved for summary judgment. Defendants argued summary judgment was proper because the Cadillac was uninsured on the day of the accident and, therefore, plaintiff's claims were barred under N.J.S.A. 39:6A-4.5(a). In his certification opposing the motion, plaintiff claimed he did not own the Cadillac. Rather, plaintiff stated Ronda Olmstead owned the car. Further, plaintiff averred he and Olmstead were friends but never married. Additionally, plaintiff asserted the Cadillac "was garaged at Ms.

2

Olmstead's home." According to plaintiff, he asked Olmstead for "permission to use the vehicle" on the day of the accident.

The original judge assigned to the summary judgment motion denied the motion without prejudice, finding the legal issue raised by defendants required an N.J.R.E 104 evidentiary hearing to determine whether plaintiff was the beneficial owner of the Cadillac on the day of the accident.

However, the original judge anticipated retiring before the evidentiary hearing could be scheduled. As a result, another judge was assigned to handle the hearing and decide defendants' motion.

Prior to the evidentiary hearing, plaintiff's attorney moved to withdraw as counsel. In April 2022, the newly assigned judge granted that motion and stayed the litigation until July 1, 2022 to allow plaintiff to retain a new attorney. The judge's order provided: "If new counsel does not enter an appearance on behalf of plaintiff, on or before July 1, 2022, plaintiff shall notify the court in writing of the status of his attempts to obtain new counsel or of his intent to proceed pro se."

During a July 8, 2022 case management conference, plaintiff told the judge he spoke to Tim McIlwaine, Esq. about representing him in the action. Based on discussions during this conference, the judge entered another order

3

requiring McIlwaine or another attorney to enter an appearance on plaintiff's behalf by July 31, 2022. Because no attorney entered an appearance by that date, the judge confirmed plaintiff would proceed with the litigation pro se. The judge then scheduled the evidentiary hearing for October 20, 2022.

A week before the evidentiary hearing, plaintiff asked that his case be transferred to a different judge. In letters sent to the Assignment Judge, plaintiff expressed his belief "there [was] bias against [him] and [he would] not be able to receive a fair trial" and felt "no matter what [he would] be ruled against."

The judge assigned to plaintiff's personal injury action construed plaintiff's request as a motion for her disqualification. The judge scheduled argument on the disqualification motion for the same date as the evidentiary hearing.

On October 20, 2020, the judge heard argument on plaintiff's disqualification motion first. There, plaintiff expressed his belief that the judge contacted McIlwaine and instructed him not to take plaintiff's case.

The judge denied plaintiff's disqualification motion. She explained:

> I'm aware that there is an attorney who practices in Atlantic County and his name is Tim McIlwaine. Mr. McIlwaine was an adversary on a case that I had when I was an attorney with Fox Rothschild.
>
> . . . .

4

I have never had a personal relationship with Mr. McIlwaine. . . . He's never appeared before me in all the time that I've been on the bench since 2017. So I have no relationship with him whatsoever. To my knowledge, no one in my staff has any relationship with him. Beyond that interaction that I had with him in that case back when I worked for Fox Rothschild, I've had no communications with him since then. And that was only within the context of being adversaries.

So to the extent that there's been an allegation by [plaintiff] that I somehow interfered with his potential relationship with Mr. McIlwaine, that is completely unfounded and I unequivocally deny that I engaged in any such conduct or that I would engage in any such conduct.

The judge further stated:

[T]he only thing that I have decided in this matter thus far . . . is that [plaintiff]'s prior counsel could be relieved.

And . . . I found that there was good cause to relieve [prior counsel] of his representation of [plaintiff]. I just found that there was a breakdown in their relationship. . . . [I]t was indicated that [plaintiff] had accused [prior counsel] of conspiring against him. To the extent that [plaintiff] seems to be making these same arguments here today, that to me, now even past the point, lends more credence to . . . those representations.

I gave [plaintiff] the opportunity to participate in that hearing. He did.

        . . . .

5

I gave [plaintiff] two months to find an attorney. He represented to me that he was on the way [to] finding an attorney. And . . . so I gave him another month to make that happen. It didn't happen. That's unfortunate for [plaintiff]. I'm sorry that he can't find anybody to represent him in connection with this matter.

But the fact is, the matter has to continue. The parties . . . are entitled to . . . a resolution of this matter, one way or another.

I had hoped that maybe it could be resolved during mediation. . . . But it didn't happen. So now we need to take the next steps . . . and that is to resolve this issue of beneficial ownership.

[T]o the extent that [plaintiff] does not like the way that I've addressed him, doesn't like the way that I've handled this matter, I apologize. You know, that's not my intention at all. . . .

And so it is what it is and this is where we are. . . . [T]o the extent that [plaintiff] feels that he didn't have sufficient time previously to put all his arguments on the record, I gave him the opportunity to do that today.

I find that his accusations of conspiracy, either by myself, by [defense counsel], or by anybody else are completely unfounded. I don't take offense at those accusations. I think [plaintiff], you know, that appears to be his state of mind, so to speak. He sees conspiracies where he sees them, and he has a right to do that. But I don't find that they are founded in fact.

And so without any fact, I have a duty, frankly, to continue in this case. I don't have any personal feelings about the parties. I don't have any personal feelings about the subject matter. So . . . , I am going to deny

A-1053-22

[plaintiff]'s motion for me to disqualify myself, and we are going to proceed to the . . . issue of beneficial ownership.

The judge then proceeded with the evidentiary hearing. Preliminarily, the judge noted the Cadillac was "undisputedly uninsured" on October 14, 2017.

Defendants then proffered evidence showing plaintiff "received benefits from operating [the Cadillac] . . . for many months or years prior." Defendants presented plaintiff's tort claim notice for the October 2017 accident, which stated: (1) "My front passenger side door is dented and my rear passenger door is dented"; and (2) "My car is parked on Route 9 in Somers Point[,] NJ." (emphasis added). Defendants argued the tort claim notice "show[ed] that this was plaintiff's vehicle, even if he wasn't the title owner or the registered owner."

Defendants also offered plaintiff's certified answers to interrogatories and other sworn statements made by plaintiff. In his interrogatory responses, plaintiff identified Olmstead as his "wife." In deposition testimony in another legal proceeding, plaintiff identified Olmstead as his "common-law wife for the last [forty-two] years" with whom he "live[d]." In yet another litigation,[1] plaintiff gave deposition testimony identifying Olmstead as his "girlfriend," stating they lived together for "around [thirty] years." Defendants also presented

_____

[1] Henderson v. Regal Cinemas, Inc., No. ATL-L-9118-11.

A-1053-22

two traffic tickets issued to plaintiff as the driver of the Cadillac—one in 2015 and the other in 2017.

Plaintiff testified he was the registered owner of the Cadillac in 2016, but "gave the car to Ms. Olmstead" in March 2017 because "she didn't have a car." He further testified he "didn't drive [the Cadillac] regularly" and only "drove it a couple of times . . . [w]ith [Olmstead's] permission," explaining he "had to ask her for the car" and "didn't live with her."

Additionally, plaintiff testified he became the Cadillac's registered owner again in 2018, insured it that same year, and towed it "somewhere between 2018 and 2019 . . . [b]ecause . . . it had stopped on [him]."

The judge then questioned plaintiff about the different time periods when he claimed to have given the car to Olmstead. Plaintiff was unable to recall specific dates because he owned a "couple of Cadillacs" during those time periods. Plaintiff failed to proffer any evidence supporting this claim.

Further, the judge questioned plaintiff's denial that he lived with Olmstead. The judge noted plaintiff gave contrary deposition testimony in other litigations, stating he lived with Olmstead. Plaintiff then told the judge that his deposition testimony in those cases was "not true."

At the close of the testimony, the judge denied plaintiff's disqualification motion, granted defendants' summary judgment motion, and dismissed plaintiff's complaint with prejudice. In her oral statement of reasons, the judge explained the original judge ordered a hearing to determine "what are the facts in the record as to [plaintiff]'s relationship to this vehicle." In summarizing the hearing testimony, the judge stated:

> [T]he only testimony that we've had here today is that of [plaintiff]. . . . And that testimony indicates that he was the person who purchased this vehicle, the Cadillac CTS, sometime in 2014, 2015. He had it in 2016. In 2017, he gave the car to [] Olmstead.
>
> Now, the testimony with regard to Ms. Olmstead is less than clear. At certain times, [plaintiff] has testified under oath in other matters that she's his common[-]law wife. Here today, he's saying she's just a friend. There's been testimony that perhaps the nature of their relationship has changed. But it nonetheless appears that [plaintiff] and Ms. Olmstead have had a longstanding relationship. They are people who have known each other for a significant period of time, anywhere between [forty] and [forty-two] years.
>
> [Plaintiff] testified today that he . . . spends a significant amount of time at Ms. Olmstead's house. He testified that when he appeared on Zoom previously in front of me, he was at her house. . . . the fact is there's a relationship.
>
> Ms. Olmstead is not by any means a stranger to [plaintiff]. And when he gave her the car in question in 2017, . . . no money changed hands. It was not an arm's

length transaction. It was clearly . . . [plaintiff] giving it to his friend or . . . other sort of partner.

So, . . . after the accident in 201[7], [plaintiff] took the car back into his possession. He testified that he obtained insurance for it, and that he re-registered it in his name. So it appears that . . . during the accident, which was October 2017, Ms. Olmstead was the registered owner.

[Plaintiff] testified that . . . he only used the car a few times in that [twelve]-month period. You know, frankly, [plaintiff]'s testimony was not clear. . . . I do find that it was evasive. . . . I asked [plaintiff] direct questions, he did not answer them. I find that there were certain times I asked him questions that I think that he would either have present knowledge of or that he might recollect. He indicated that he didn't have knowledge or that he didn't remember. And I didn't find those answers to be truthful, frankly.

I did find that he testified in a way that I think tried to downplay his use of the vehicle during the time in question. There's no doubt that he was the owner of it for at least the majority of the time in question that he had it. . . .

So . . . out of the rough timeline that we have, because [plaintiff] was either unwilling or unable to testify clearly in this time period between 2014 and about 2019[,] [plaintiff] had the car for at least four of those five years it was in his possession. It just happened to be this period.

I also found the testimony that [plaintiff] had another car . . . [not] particularly clear either. There is testimony in other depositions that was placed on the record about him driving a Cadillac. He says it was a

10

different Cadillac. . . . [T]here's really not a whole lot before me whether I could find that. . . .

But at this point, . . . the burden is on the uninsured person to establish that they are not culpably uninsured. And overall, I find that [plaintiff] has not met his burden. . . . [H]e testified that he was . . . just using Ms. Olmstead's car on that day because his car was in the shop. However, he testified under oath . . . that car was not insured, and he was not insured, and that Ms. Olmstead's car was not insured.

. . . .

So I think . . . [plaintiff] has really established . . . he was not insured at the time. He had no interest in being insured. Ms. Olmstead's car was undoubtedly uninsured. I don't believe him when he says that he only used the car a few times . . . . [Plaintiff] couldn't tell me what a few times meant to him.

[I] don't believe that . . . two of the three times that he used the car, . . . he had a speeding ticket and the other time was this accident. So I guess there was only one time out of the three times that he used it in [twelve] months that he didn't have an incident related to the car. I don't believe that testimony. I don't find it to be credible.

I also find that . . . even if he wasn't the actual owner of the vehicle [at] the time in question, he was a beneficial owner. He was the one who purchased the car. He was the one who had the ability to give it to Ms. Olmstead to use, for whatever reason that she needed it, and I believe that he used it as he needed to.

I find that under all the evidence that's in front of me, that it's pretty clear that he had more than just

11

occasional authority over the vehicle. When he submitted his claim for damages against New Jersey Transit . . . , he did refer to it as "his car." I understand he's saying, well, I was just using that generally. I don't necessarily find that to be believable either. I think he did think of it as his car.

[H]e owned the car before the incident. He owned the car after the incident. I think during that time period that Ms. Olmstead had it, . . . [plaintiff] let her use it. . . . It seems more likely than not to me that . . . he let her keep it at her house and she could use it as she saw fit, but that he also had equal access to that vehicle.

And I find that based on . . . the totality of their relationship, . . . they don't have to be . . . romantically involved, but it's pretty clear that there is an ongoing, intimate relationship, meaning they're close friends or whatever. Again, he would be at Ms. Olmstead's house during the times that he would appear for proceedings in this matter.

[A]nd I think, frankly, both of them were owners of the vehicle. . . . I don't know who was using it more. I don't have any testimony in front of me as to who was using it more. When I asked [plaintiff] to testify as to his understanding of how Ms. Olmstead was using it, he was vague in that testimony as well. Most of his testimony, I find to be intentionally vague, and like I said, overall evasive. When I was asking him direct questions, it was pretty clear to me that he did not want to answer them.

So, . . . I think the facts that were in the record at the point of summary judgment . . . supported the idea that [plaintiff] was a beneficial owner. . . .

A-1053-22

So overall, I didn't find his testimony to be credible. I find that he is a beneficial owner of the vehicle. I find that he was not himself insured. The other vehicle that he supposedly used at the time was not insured. This vehicle was not insured. And therefore, under the statute, his claim is barred.

On appeal, plaintiff contends the judge erred in denying his disqualification motion. Additionally, because he asserted he did not own the Cadillac at the time of the accident, plaintiff argues the judge erred in granting defendants' motion for summary judgment. We reject these arguments.

We first consider plaintiff's argument that the judge should have granted his recusal motion. "[R]ecusal motions are 'entrusted to the sound discretion of the judge and are subject to review for abuse of discretion.'" Goldfarb v. Solimine, 460 N.J. Super. 22, 30 (App. Div. 2019), aff'd as modified on other grounds, 245 N.J. 326 (2021).

Rule 1:12-2 governs motions for disqualification. Disqualification is proper if, among other reasons, "there is any . . . reason which might preclude a fair and unbiased hearing and judgment, or which might reasonably lead counsel or the parties to believe so." R. 1:12-1(g). "[J]udges must avoid acting in a biased way or in a manner that may be perceived as partial," Goldfarb, 460 N.J. Super. at 31 (quoting DeNike v. Cupo, 196 N.J. 502, 514 (2008)). "[A] movant

need not show actual prejudice; 'potential bias' will suffice." Ibid. (quoting State v. Marshall, 148 N.J. 89, 276 (1997)).

However, "[j]udges may not 'err on the side of caution and recuse themselves unless there is a true basis that requires disqualification.'" Ibid. (quoting Johnson v. Johnson, 204 N.J. 529, 551 (2010) (Rabner, J., concurring)). "A judge's duty to sit where appropriate is as strong as the duty to disqualify oneself where sitting is inappropriate." Ibid. (citing Johnson, 204 N.J. at 551). "It is not only unnecessary for a judge to withdraw from a case upon a mere suggestion that he is disqualified:  it is improper for him to do so unless the alleged cause of recusal is known by him to exist or is shown to be true in fact." Id. at 31-32 (quoting Hundred E. Credit Corp. v. Eric Schuster Corp., 212 N.J. Super. 350, 358 (App. Div. 1986)).

Having reviewed the record, we are satisfied plaintiff failed to provide evidence that the motion judge could reasonably be perceived as partial or biased.  During argument on the recusal motion, plaintiff expressly declined to allege the judge played any improper role in this prior attorney's withdrawal from his personal injury action.  Further, plaintiff provided no evidence of such conduct by the judge.  Additionally, as plaintiff did not provide transcripts of any court proceedings other than the October 20, 2022 hearing, we are unable

to determine whether the judge precluded plaintiff from speaking in court as he claimed. In the absence of any evidentiary support for judicial recusal, the judge did not abuse her discretion in denying plaintiff's motion.

We next consider plaintiff's claim the judge erred in granting summary judgment to defendants. We review a trial court's grant of a motion for summary judgment de novo, applying the same standard used by the trial court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). We consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). Summary judgment is appropriate where the record establishes there is "no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). "To decide whether a genuine issue of material fact exists, the trial court must 'draw[] all legitimate inferences from the facts in favor of the non-moving party.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (alteration in original) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)). "The court's function is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine

issue for trial.'" Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021) (quoting Brill, 142 N.J. at 540).

> Summary judgment should be granted, in particular, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."
>
> [Friedman, 242 N.J. at 472 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).]

Additionally, we apply a deferential standard in reviewing factual findings by a judge. See Balducci v. Cige, 240 N.J. 574, 594-95 (2020). In an appeal from a bench trial, we "give deference to the trial court that heard the witnesses, sifted the competing evidence, and made reasoned conclusions." Griepenburg v. Township of Ocean, 220 N.J. 239, 254 (2015). "[A]ppellate courts should 'not disturb the factual findings and legal conclusions of the trial judge' unless convinced that those findings and conclusions were 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Ibid. (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). As such, "findings by a trial court are binding on appeal when supported by adequate, substantial, credible evidence." Gnall v. Gnall, 222 N.J. 414, 428 (2015).

Further, we "owe deference to the trial court's credibility determinations . . . because it has 'a better perspective than a reviewing court in evaluating the veracity of a witness,'" C.R. v. M.T., 248 N.J. 428, 440 (2021) (quoting Gnall, 222 N.J. at 428), and because "an appellate court's review of a cold record is no substitute for the trial court's opportunity to hear and see the witnesses who testified on the stand," Balducci, 240 N.J. at 595. However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference," and are reviewed de novo. Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019) (alteration in original) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

Plaintiff repeats the same arguments presented to the hearing judge. He reiterates he was not the beneficial owner of the Cadillac and had no statutory obligation to insure the car. Therefore, he contends the judge erred in granting summary judgment to defendants.

New Jersey's no-fault statute, N.J.S.A. 39:6A-1 to -35, is "intended to serve as the exclusive remedy for payment of out-of-pocket medical expenses arising from an automobile accident." Caviglia v. Royal Tours of Am., 178 N.J. 460, 466 (2004). To contain insurance costs, the Legislature enacted N.J.S.A.

39:6A-4.5, which "ensur[ed] that an injured, uninsured driver does not draw on the pool of accident-victim insurance funds to which he did not contribute." Id. at 471. The statute provides:

> Any person who, at the time of an automobile accident resulting in injuries to that person, is required but fails to maintain medical expense benefits coverage mandated by [N.J.S.A. 39:6A-4], [N.J.S.A. 39:6A-3.1] or [N.J.S.A. 39:6A-3.3] shall have no cause of action for recovery of economic or noneconomic loss sustained as a result of an accident while operating an uninsured automobile.
>
> [N.J.S.A. 39:6A-4.5(a).]

By enacting no-fault automobile insurance laws, the Legislature sought to reduce the cost of automobile insurance for New Jersey residents. N.J. Mfrs. Ins. Grp. v. Holger Trucking Corp., 417 N.J. Super. 393, 402 (App. Div. 2011). The Legislature also contemplated easing the burden on New Jersey courts inundated with automobile personal injury actions. See Perelli v. Pastorelle, 206 N.J. 193, 203 (2011) (quoting Caviglia, 178 N.J. at 477) ("The Legislature reasoned that N.J.S.A. 39:6A-4.5(a) would 'produce greater compliance with compulsory insurance laws and, in turn, reduce litigation, and result in savings to insurance carriers and ultimately the public' by reduced premiums.").

In Aronberg v. Tolbert, 207 N.J. 587, 598 (2011), our Supreme Court noted N.J.S.A. 39:6A-4.5, "[o]n its face, . . . deprives an uninsured motorist of

18

the right to sue for any loss caused by another, regardless of fault. " "[I]f an uninsured motorist, while operating a vehicle, is injured by another driver who runs a red light, the uninsured motorist has no cause of action under N.J.S.A. 39:6A-4.5(a)." Id. at 598-99.

Here, it is undisputed the Cadillac was uninsured on the day of the accident. Thus, the hearing judge had to decide whether plaintiff was the beneficial owner of the uninsured Cadillac on October 14, 2017.

Under New Jersey law, "the true owner of an automobile may be one other than the holder of legal title to that vehicle." Verriest v. INA Underwriters Ins. Co., 142 N.J. 401, 408 (1995) (quoting Am. Hardware Mut. Ins. Co. v. Muller, 98 N.J. Super. 119, 129 (Ch. Div. 1967)). The true owner, or "beneficial owner," of a vehicle "is the person who maintains 'possession and control of the automobile,'" such that they have "control and authority over its use." Id. at 409 (first quoting Bohannon v. Aetna Cas. & Sur. Co., 212 Cal. Rptr. 848, 850 (1985), and then quoting Hicks v. Land, 117 So.2d 11, 12 (Fla. Dist. Ct. App. 1960) (citation omitted)).

Here, based on the evidence adduced at the hearing and her credibility determinations, the judge concluded plaintiff and Olmstead shared ownership of the Cadillac. The judge's findings, as stated in her thorough and detailed reasons

placed on the record, are supported by substantial credible evidence. Although plaintiff disavowed possession or control of the Cadillac on the day of the accident, we must defer to the judge's credibility determinations, particularly her finding that plaintiff's testimony during the evidentiary hearing was evasive and inconsistent with prior sworn testimony and documentary evidence.

Having reviewed the record, we are satisfied the judge correctly concluded plaintiff was the beneficial owner of the Cadillac. Absent the statutory required automobile insurance for the Cadillac on the day of the accident, plaintiff had no right to recover economic or non-economic damages against defendants under N.J.S.A. 39:6A-4.5. Thus, the judge aptly granted summary judgment to defendants and dismissed plaintiff's complaint.

To the extent we have not addressed any arguments raised by plaintiff, they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1053-22